# REVISED, FEBRUARY 5, 1998

## UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

_____

No. 96-10779
_____


AMERICAN STATES INSURANCE COMPANY,

Plaintiff-Appellee,
Cross Appellant,

and

NORTH RIVER INSURANCE CO; UNITED STATES FIRE
INSURANCE COMPANY; WESTERN WORLD INSURANCE COMPANY, INC.


Intervenor Plaintiffs-Appellees
Cross Appellants,

versus

H. BARRY BAILEY, ET AL.,

Defendants,

H. BARRY BAILEY,

Defendant-Appellee,

CASSIE E. ALLBAUGH; CANDIS WHITE; ALLISON LOVETT;
GINGER PIERSON; JAYNE GARDNER; RUBY WOOLRIDGE;
PATCHEZ FOX WELDON HAYNES, Reverend;
WILLIAM LONGSWORTH, Reverend;
THE FIRST UNITED METHODIST CHURCH OF FORT WORTH, INC.;
KAY JOHNSON; DORAYNE LEVIN; GAIL COOKE; J. CHARLES SHELLEY,

Intervenor Defendants-Appellants
Cross Appellees.

_____

Appeals from the United States District Court
for the Northern District of Texas
_____

January 30, 1998

BEFORE KING and JONES, Circuit Judges and KENDALL, District Judge.[*]

EDITH H. JONES, Circuit Judge:

This declaratory judgment suit was filed by three insurance carriers seeking a declaration that they have no duty to either defend or indemnify their insureds for claims that stem from allegations of sexual misconduct against the Reverend H. Barry Bailey. The district court granted summary judgment for the carriers. This appeal ensued. We find that the claims alleged against the carriers' insureds are excluded from coverage by the policies at issue. Therefore, the carriers have no duty to defend or indemnify their insureds, and we affirm.

## I.

In February 1995, seven women (the "Allbaugh plaintiffs") filed suit in Texas district court against the Reverend H. Barry Bailey alleging a variety of tort claims which all stemmed from alleged sexual improprieties by Bailey. Bailey was the pastor-in-charge of the First United Methodist Church of Fort Worth ("FUMC").

In June 1995, Gail Cooke filed a separate suit in Texas district court against Bailey, FUMC, and four associate ministers of FUMC.[1] Her claims against Bailey were essentially the same as those of the Allbaugh plaintiffs. Her claims against FUMC and the four associate ministers were based on vicarious liability and the

---

[*] District Judge for the Northern District of Texas, sitting by designation.

[1] The four associate ministers are the Reverends William Longsworth, Weldon Haynes, Kay Johnson, and J. Charles Shelley.

2

allegation that FUMC and the associate ministers knew or should have known of Bailey's conduct and should have attempted to stop or warn Cooke of his behavior. In August 1995, Dorayne Levin intervened in Cooke's state court suit.

In May 1995, American States Insurance Co. ("American States") filed this declaratory judgment action in federal court under diversity jurisdiction. In July 1995, North River Insurance Co. and United States Fire Insurance Co. (collectively "Crum & Forster") intervened in American States's declaratory judgment action. Western World Insurance Co. ("Western World") also intervened in July 1995. The Allbaugh plaintiffs, Cooke, Levin, FUMC, and the four associate ministers were all eventually joined as defendants in this federal suit. In May 1996, the district court granted the insurance carriers' motions for summary judgment, finding that they had a duty neither to defend nor to indemnify their insureds (Bailey, FUMC, and the four associate ministers) against the claims of the Allbaugh plaintiffs, Cooke, and Levin.

The Allbaugh plaintiffs, Cooke, Levin, FUMC, and the four associate ministers appealed the district court's grant of summary judgment. Before this court heard the case at oral argument, the Allbaugh plaintiffs, Cooke, and Levin settled with Bailey. Therefore, the only issues remaining before this court are Crum & Forster's and Western World's duty to defend or indemnify FUMC and the four associate ministers against the claims of Cooke and

Levin.[2]  Also before the court is the issue of whether the district court erred in finding that the Allbaugh plaintiffs, Cooke, and Levin are liable for all three insurance carriers' court costs.

## II.

Cooke's and Levin's specific claims against FUMC and the four associate ministers are as follows:

1. intentional infliction of emotional and mental distress
2. breach of fiduciary duty, for which fiduciary duty is defined alternatively as the duty to discipline a pastor, the duty of trust and confidence between a parishioner and a pastor, or the duty to report Bailey's conduct to church authorities
3. negligent credentialing of Bailey
4. negligent hiring of Bailey
5. negligent assignment of pastoral charges to Bailey
6. negligent supervision of Bailey
7. negligent failure to warn others of known or knowable harassing and abusive behavior by Bailey
8. negligent dereliction of duties as ordained ministers and agents, servants, and employees of the United Methodist Church
9. negligent counseling

Although Cooke and Levin have settled with Bailey, their claims against him remain relevant to determining coverage as to FUMC and the four associate ministers.  Cooke's and Levin's specific claims against Bailey are as follows:

1. battery
2. assault
3. false imprisonment
4. invasion of privacy

---

[2]  American States insured only Bailey and, therefore, is no longer a party to this litigation.

The settlements between Bailey and Cooke and Levin included an agreement not to pursue any actions against FUMC or the four associate ministers for vicarious liability for Bailey's conduct. Cooke's and Levin's remaining claims against FUMC and the four associate minister are listed in the next section of this opinion.

4

5. intentional infliction of emotional and mental distress
6. breach of fiduciary duty
7. negligence
8. negligent counseling
9. failure to warn plaintiffs of his sexual deviancy
10. defamation (*Cooke only*)

The alleged facts underlying Cooke's and Levin's claims against Bailey are also relevant to determining coverage. In general, Cooke and Levin contend that "[b]etween 1976 and 1994 the Reverend Barry Bailey continued to abuse his position as Pastor-in-Charge of the First United Methodist Church of Fort Worth, Inc., to force or induce women to engage with him in lewd, lascivious, obscene, and immoral sexual conduct, sexual abuse, and sexual harassment." Cooke describes the specific facts underlying her claims as follows:

3.15. During the 1976 to 1994 time-frame, Reverend Bailey initiated conversations with her, in person and by telephone, which were inappropriate, lewd, and obscene. During these conversations, Reverend Bailey persisted in inappropriate sexual discussions involving sexual affairs, graphic sexual acts . . . , graphic sexual language, and personally insulting sexual language.

3.16. Reverend Bailey also exposed [himself] to Ms. Cooke on several occasions at the Church and even at the parsonage with his own wife in the next room.

3.17. Reverend Bailey also accosted Ms. Cooke at the Church on several occasions. In those encounters, Reverend Bailey inappropriately grabbed private areas of Ms. Cooke's body and on several occasions physically blocked her exit from offices or rooms on the Church property, forcing himself and his comments upon her.

. . . .

3.19. Gail Cooke recently became aware of information which leads her to believe, and she does allege, that Reverend Bailey has made slanderous and defamatory statements about her to third persons, such statements being actionable under the legal theories of

5

slander and defamation, for which she seeks recovery of damages herein.

Plaintiff's Third Amended Petition at 16-18. Levin describes the specific facts underlying her claims as follows:

> 3.20. At approximately 11 a.m. on September 1, 1993, Intervenor [Levin] presented herself to Reverend Barry Bailey for her meeting. . . . During this meeting with Reverend Bailey, Intervenor described that she was a victim of childhood sexual abuse and had suffered emotional and psychological injuries as a result of that abuse. Intervenor also disclosed to Reverend Bailey her sexual abuse by a therapist and her experiences which followed from that abuse. Reverend Bailey showed great interest in the specifics of how the therapist had abused Intervenor. He also inquired and showed great interest in how Intervenor's husband had been abusive to her during her marriage.
>
> . . . .
>
> 3.22. Additionally, Reverend Bailey advised Intervenor to "start saying yes to people who ask you out, and if a man wants to have sex with you, it's probably normal. If it does not work out, say yes to the next man who asks you out." Reverend Bailey also advised Intervenor to stop working on her sexual abuse counseling project and "get a job" because "you can't do anything to stop this." He also told Intervenor that he wanted to meet with her again and to schedule another appointment.

First Amended Plea in Intervention of Dorayne Levin at 16-17.

### III.

As an initial matter, Cooke and Levin argue that the district court did not have jurisdiction to rule on the duty to indemnify because the underlying state court suit had not reached final judgment and, therefore, there was no justiciable controversy. In the alternative, Cooke, FUMC, and the four associate ministers argue that even if the district court had

6

jurisdiction, it should have abstained from exercising its jurisdiction.[3]

We review a district court's determination that there existed a justiciable controversy de novo. *See Ynclan v. Department of Air Force*, 943 F.2d 1388, 1390 (5th Cir. 1991). The decision of a district court to exercise its declaratory judgment jurisdiction is reviewed for abuse of discretion. *See Wilton v. Seven Falls Co.,* 115 S. Ct. 2137, 2144 (1995).

**A.**

A federal court may not issue a declaratory judgment unless there exists an "actual controversy." *See Middle South Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986) (citing *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273 (1941)). An actual controversy may exist when an insurance carrier seeks a declaratory judgment that it has a duty neither to defend nor indemnify its insured in a state court action that has not yet proceeded to judgment. *See Western Heritage Ins. Co. v. River Entertainment*, 998 F.2d 311, 315 (5th Cir. 1993). The district court thus had jurisdiction to rule on the duty to indemnify despite the fact that the underlying state court suit had not yet reached final judgment.

**B.**

A district court has broad, but not unfettered, discretion to retain or dismiss a declaratory judgment suit. *See*

---

[3] Cooke, Levin, FUMC, and the four associate ministers do not contest the jurisdiction of the district court to decide the issue of the duty to defend.

7

*Wilton*, 115 S. Ct. at 2144; *Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 778 (5th Cir. 1993). Under Texas law, the duty to defend is broader than the duty to indemnify. *See Gulf Chem. & Metallurgical Corp. v. Associated Metals & Minerals Corp.*, 1 F.3d 365, 369 (5th Cir. 1993). Logic and common sense dictate that if there is no duty to defend, then there must be no duty to indemnify. *See Western Heritage Ins. Co.*, 998 F.2d at 315. Given that the district court was going to decide the issue of the duty to defend (the propriety of which Cooke, FUMC, and the four associate ministers do not question), it was not an abuse of discretion for the district court also to decide the issue of the duty to indemnify.[4]

## IV.

This court reviews a grant of summary judgment de novo. *See Canutillo Indep. Sch. Dist. v. National Union Fire Ins. Co.*, 99 F.3d 695, 700 (5th Cir. 1996). A district court's interpretation of an insurance contract is a question of law which this court also

---

[4] We have cautioned district courts to provide a written or oral explanation for their decisions to grant or deny a motion to dismiss a declaratory judgment action. *See Travelers Ins. Co.*, 996 F.2d at 779 n.14. Nonetheless, in cases where the district court did not offer an explanation, we have proceeded to engage in an independent review of the relevant factors under *Travelers Insurance Co.* to determine whether the district court abused its discretion in granting or denying the motion to dismiss. *See id.* at 779. As in *Travelers Insurance Co.*, the district court in this case offered no explanation for its decision to deny appellants' motion to dismiss. *See id.* at 778-79. As in *Travelers Insurance Co.*, we have conducted an independent review of the six factors relevant to the abstention doctrine in a declaratory judgment action. *See id.* at 779. We conclude that the district court did not abuse its discretion in deciding to adjudicate this case on the merits.

reviews de novo. *See id.* An insurer bears the burden of proving that exclusions in the policy in question bar coverage for the plaintiff's claims. *See id.* at 701.

In this diversity case, Texas rules of contract interpretation control. *See id*. at 700. Under Texas law, the interpretation of insurance contracts is governed by the same rules that apply to contracts in general. *See id.* (citing *Forbau v. Aetna Life Ins. Co.*, 876 S.W.2d 132, 133 (Tex. 1994)).

Exceptions and limitations in an insurance policy are strictly construed against the insurer. *See id.* at 701 (citing *Kelly Assocs., Ltd. v. Aetna Cas. & Sur. Co.*, 681 S.W.2d 593, 596 (Tex. 1984)). Therefore, this court "must adopt the construction of an exclusionary clause urged by the insured as long as that construction is not itself unreasonable, even if the construction urged by the insurer appears to be more reasonable or a more accurate reflection of the parties' intent." *Id.* (quoting *Barnett v. Aetna Life Ins. Co.*, 723 S.W.2d 663, 666 (Tex. 1987)). These rules favoring the insured, however, are applicable only when there is an ambiguity in the policy; if the exclusions in question are susceptible to only one reasonable interpretation, then these rules do not apply. *See id.* (citing *National Union Fire Ins. Co. v. Hudson Energy Co.*, 811 S.W.2d 552, 555 (Tex. 1991)).

In determining an insurer's duty to defend, Texas courts utilize the "eight corners rule." *See National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.*, 939 S.W.2d 139, 141 (Tex. 1997). Under this rule, an insurer's duty to defend is determined

9

by the language of the insurance policy and a liberal interpretation of the allegations in the pleadings. *See id.* "In reviewing the underlying pleadings, the court must focus on the factual allegations that show the origin of the damages rather than on the legal theories alleged." *Id.* (citing *Adamo v. State Farm Lloyds Co.*, 853 S.W.2d 673, 676 (Tex. App.—Houston [14th Dist.] 1993, writ denied) ("It is not the cause of action alleged that determines coverage but the *facts* giving rise to the alleged actionable conduct.")).

## A. Western World Policies

Western World issued three commercial general liability policies to FUMC. The policy numbers and coverage periods are as follows: (1) GLA 328492, 11/11/91 to 11/11/92; (2) GLA 358038, 8/6/92 to 8/6/93; and (3) NGL 05750, 8/6/93 to 8/6/94. FUMC is the only relevant named insured on each policy.[5] The four associate ministers are insureds under each policy as either executive officers or employees of FUMC.[6]

Each policy contains the following exclusion:

SEXUAL ACTION EXCLUSION

---

[5] All of Western World's policies list two named insureds: FUMC and First United Methodist Church of Fort Worth Foundation, Inc. The latter is not a party to this litigation.

[6] Cooke and Levin argue extensively in their briefs that the four associate ministers are not insureds under Western World's commercial general liability policies, but rather "professionals covered by the policy." By making this distinction, Cooke and Levin attempt to establish that the policies' "sexual action" exclusion is inapplicable to the four associate ministers because the exclusion applies only to "insureds." Cooke's and Levin's argument is meritless based upon the simple and unambiguous language of the policies.

It is agreed that no coverage exists for claims or suits brought against any insured for damages arising from sexual action. Sexual action includes, but is not limited to, any behavior with sexual connotation or purpose—whether performed for sexual gratification, discrimination, intimidation, coercion or other reason.

It is further agreed that this exclusion applies even if an alleged cause of the damages was the insured's negligent hiring, placement, training, supervision, act, error or omission.

Cooke, Levin, FUMC, and the four associate ministers argue that this exclusion does not preclude coverage for Cooke's and Levin's claims against FUMC and the four associate ministers. They are incorrect.

The plain meaning of "sexual action" as described in the exclusion includes all of Bailey's misconduct. It is impossible to characterize Bailey's behavior as other than having a "sexual connotation or purpose" and being "performed for sexual gratification." The exclusion establishes very broad parameters for acts that fall within its compass by using the words, "[s]exual action includes, but is not limited to," and Bailey's actions toward Cooke and Levin unambiguously fall within those parameters.

This court has held that the words "arising out of,"[7] when used within an insurance policy, are "broad, general, and comprehensive terms effecting broad coverage." *Red Ball Motor Freight, Inc. v. Employers Mut. Liab. Ins. Co.*, 189 F.2d 374, 378 (5th Cir. 1951). The words are "understood to mean 'originating from,' 'having its origin in,' 'growing out of' or 'flowing from.'"

---

[7] For the purposes of this discussion, the term "arising out of" is indistinguishable from the term "arising from," which is the term used in Western World's "sexual action" exclusion.

11

*Id.; see also Continental Cas. Co. v. City of Richmond*, 763 F.2d 1076, 1080-81 (9th Cir. 1985) (applying *Red Ball*'s interpretation of the term "arising out of," and concluding that a claim need only bear an "incidental relationship" to the excluded injury for the policy's exclusion to apply). Without Bailey's sexual misconduct, Cooke and Levin would have no claims against FUMC and the four associate ministers. Every alleged harm caused to Cooke and Levin by FUMC and the four associate ministers stems from and is integrally related to Bailey's acts. Therefore, we agree with the district court that all of the factual allegations that underlie Cooke's and Levin's legal claims against FUMC and the four associate ministers arise out of Bailey's sexual actions, thereby precluding coverage under Western World's policies.

In *Old Republic Insurance Co. v. Comprehensive Health Care Associates, Inc.*, 2 F.3d 105, 108-09 (5th Cir. 1993), this court held that claims for negligence per se, ratification, negligent hiring, and negligent supervision against an employer for the sexual misconduct of its employee were barred from coverage by the following exclusion:

> In consideration of the premium charge, it is agreed that such coverage as is provided by this policy shall not apply to any claim, demand and causes of action arising out of, or resulting from . . . sexual abuse . . . . whether caused by, or at the instigation of, or at the direction of, or omission by, the Insured, his employees, patrons or any causes whatsoever.

*Id.* at 108. This "sexual abuse" exclusion is sufficiently similar to the "sexual action" exclusion in Western World's policies to draw a close parallel between *Old Republic* and the case before us.

12

Although Cooke and Levin allege a litany of causes of action against FUMC and the four associate ministers that were not alleged in *Old Republic*, the fundamental reasoning of *Old Republic* that a broadly worded "sexual abuse" exclusion is not to be narrowly construed remains applicable.  Western World has no duty to defend or to indemnify FUMC or the four associate ministers against any of Cooke's or Levin's claims.

In addition, we note that many of Cooke's and Levin's claims are expressly excluded from coverage because the alleged causes of damages included FUMC's and the four associate ministers' "negligent hiring, placement, training, supervision, act, error or omission."

### B. Crum & Forster Policies

Crum & Forster issued two types of policies to FUMC, a general liability policy and a workers' compensation and employers' liability policy.[8]  In total, Crum & Forster issued five policies to FUMC.  Each policy issued is briefly outlined below:

1. General Liability Policy
   A. Policy # 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
      (1) Coverage period: 8/6/93 to 8/6/94
      (2) Issued by: U.S. Fire Insurance Co.
2. Workers' Compensation and Employers' Liability Policies
   A. Policy # 408-52-45-28
      (1) Coverage period: 8/6/90 to 8/6/91
      (2) Issued by: U.S. Fire Insurance Co.
   B. Policy # 408-52-46-57
      (1) Coverage period: 8/6/91 to 8/6/92
      (2) Issued by: U.S. Fire Insurance Co.
   C. Policy # 405-52-47-41
      (1) Coverage period: 8/6/92 to 8/6/93

---

[8] All of Crum & Forster's policies list two named insureds: FUMC and First United Methodist Church of Fort Worth Foundation, Inc.  The latter is not a party to this litigation.

13

                    (2)   Issued by: North River Insurance Co.
          D.    Policy # 408-52-48-09
                    (1)   Coverage period: 8/6/93 to 8/6/94
                    (2)   Issued by: North River Insurance Co.

The general liability policy contained two types of coverage.
Coverage A provided coverage for damages resulting from bodily
injury, and Coverage B provided coverage for damages resulting from
personal injury.

## 1. General Liability Policy

### (a).  Coverage A

        Coverage A insures against damages resulting from bodily
injury caused by an "occurrence."[9]  "Occurrence" is defined as "an
accident,    including    continuous    or    repeated    exposure    to
substantially the same general harmful conditions."  Because none
of Bailey's actions were accidental, it follows that no coverage
exists for any of Cooke's and Levin's claims against FUMC and the
four associate ministers.

        Under Texas law, where a third-party's liability is
related to and interdependent on other tortious activities, the
ultimate issue is whether the underlying tortious activities are
encompassed within the definition of "occurrence."  *See Cornhill*
*Ins. PLC v. Valsamis, Inc.*, 106 F.3d 80, 87 (5th Cir. 1997); *New*
*York Life Ins. Co. v. Travelers Ins. Co.*, 92 F.3d 336, 339 (5th
Cir. 1996).  An insurer has no duty to defend or to indemnify its
insured against claims that could not be brought absent the

---

[9]  The policy defines "bodily injury" as "bodily injury,
sickness  or  disease  sustained  by  a  person,  including  death
resulting from any of these at any time."

14

underlying and excluded tortious activities. *See Cornhill Ins. PLC*, 106 F.3d at 87; *New York Life Ins. Co.*, 92 F.3d at 339. For instance, in *New York Life Ins. Co. v. Travelers Ins. Co.*, New York Life was sued for the negligent hiring, training, and supervision of one its employees, who allegedly defrauded a New York Life client. *See New York Life Ins. Co.*, 92 F.3d at 337, 340. The court found that the employee's underlying fraudulent acts were not an "occurrence" under the policy.[10] *See id.* at 339. Consequently, the court held that the claims against New York Life were excluded from coverage because "[a] claim against a principal is 'related' to and 'interdependent' on a claim against an agent if the claim against the principal would not exist absent the claim against the agent." *Id.* at 340.

All of Cooke's and Levin's claims against FUMC and the four associate ministers either require proof of misconduct by Bailey or are related to and interdependent on Bailey's sexual misconduct. The basic factual allegation underlying every claim in this lawsuit is that Bailey engaged in inappropriate sexual behavior with Cooke and Levin. While the alleged failure of FUMC and the four associate ministers to adequately respond to Bailey's conduct may have exacerbated Cooke's and Levin's injuries, there would have been no injuries at all absent Bailey's improper acts. Therefore, if Bailey's conduct is excluded from coverage, then so

---

[10] The policy defined "occurrence" as "an accident, including continuous and repeated exposure to conditions, which results in bodily injury or property damage neither expected or intended from the standpoint of the insured . . . ."

15

are all of Cooke's and Levin's claims against FUMC and the four associate ministers.

The Texas Supreme Court has held that a person's acts are not accidental when he commits an intentional act that results in injuries that ordinarily follow from or could be reasonably anticipated from the intentional act. *See Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 827-28 (Tex. 1997). Although a person may not intend the harm caused by his acts, if the harm is a natural or probable result of those acts, they are not caused by an "accident."[11] *See id.* It is impossible not to conclude that Bailey's acts were intentional. For example, one cannot "accidentally" expose oneself to a parishioner during a counseling session. Appellants produce no evidence that Bailey did not intend to engage in sexually inappropriate behavior with them. Their artful pleading suggesting that Bailey's acts were negligent or reckless cannot overcome the basic facts underlying their claims.

In short, Crum & Forster has no duty to defend or to indemnify FUMC or the four associate ministers under Coverage A. All of Cooke's and Levin's claims against FUMC and the four associate ministers are related to and interdependent on Bailey's sexual actions, which were not "occurrences" as defined by the policy.

### (b). Coverage B

---

[11] We note that an intentional act and the intent to cause injury are two distinct concepts. *See Trinity Ins. Co.*, 945 S.W.2d at 828 n.6. Our analysis, therefore, does not touch upon an insurance policy's language dealing with intentional injury.

16

Coverage B insures against damages resulting from personal injury.[12]  Because neither Cooke nor Levin allege any facts or claims against FUMC and the four associate ministers based upon "personal injury" as defined by the policy, we find no duty to defend or to indemnify on the part of Crum & Forster under Coverage B.

## 2. Workers' Compensation and Employers' Liability Policies

Cooke, Levin, FUMC, and the four associate minsters fail to argue in their briefs that the district court incorrectly denied coverage under Crum & Forster's Workers' Compensation and Employers' Liability policies.  Although each party explains in its brief the contents of the policies and why the district court held that there was no duty to defend or to indemnify under the policies, they do not proceed to argue why or on what grounds the district court's finding was legally or factually incorrect.

Failure to provide any legal or factual analysis of an issue results in waiver.  *See United States v. Green*, 964 F.2d 365, 371 (5th Cir. 1992); *see also Port Arthur Towing Co. v. John W. Towing, Inc.*, 42 F.3d 312, 319 (5th Cir. 1995) (holding that a question posed for appellate review but not argued in the opening brief is waived).  Cooke, Levin, FUMC, and the four associate ministers waived the issue of the duties to defend and indemnify

---

[12]  The policy defines "personal injury" as "injury, other than 'bodily injury,' arising out of one or more of the following offenses: (a) False arrest, detention or imprisonment; . . .  (d) Oral or written publication of material that slanders or libels a person or organization or disparages a person's or organization's goods, products or services; or (e) Oral or written publication of material that violates a person's right of privacy."

under Crum & Forster's Workers' Compensation and Employers' Liability policies.

## V.

Finally, Cooke, Levin, FUMC, and the four associate ministers argue that the district court erred in awarding court costs to American States, Crum & Forster, and Western World as the prevailing parties. We review a district court's award of court costs for abuse of discretion. *See International Assoc. of Machinists v. Texas Steel Co.*, 538 F.2d 1116, 1121-22 (5th Cir. 1976). In the instant case, the district court did not abuse its discretion in awarding court costs.

## VI.

For the foregoing reasons, we AFFIRM the decision of the district court.

**AFFIRMED.**