**MARTIN MARIETTA MATERIALS SOUTHWEST, LTD. f/k/a/ Marock, Inc., et al. Plaintiffs,**

v.

**ST. PAUL GUARDIAN INS. CO., Defendant.**

No. CIV A 3:00–CV–2585X.

United States District Court, N.D. Texas, Dallas Division.

May 10, 2001.

W. Kyle Gooch, Canterbury Stuber Elder Gooch & Surratt, Dallas, TX, for Plaintiffs.

### *MEMORANDUM OPINION AND ORDER*

KENDALL, District Judge.

Before the Court are Plaintiffs' Motion for Partial Summary Judgment, filed February 7, 2001; Defendant's Response and Motion for Summary Judgment, filed February 27, 2001; Plaintiffs' Response and Reply, filed March 14, 2001; and Defendant's Reply, filed March 29, 2001. Having considered the briefs, facts, and applicable law, this Court finds that Plaintiffs' Motion should be **DENIED**, and Defendant's Motion **GRANTED**.

## I. FACTUAL BACKGROUND

Plaintiff Martin Marietta Materials Southwest Ltd. ("Marock") owned a facility that adjoined Big Sandy Creek in Decatur, Texas. From August 29, 1998 to August 29, 1999, St. Paul provided primary general liability coverage of up to $1,000,000 for Marock and its officers. Trinity Materials, Inc., which held senior rights to use water from Big Sandy Creek, operated a sand and gravel company downstream of Marock.

It is alleged that in September 1998, Marock, without a valid water permit,[1] diverted the creek to dredge, wash, and screen sand and gravel for on-site construction; in doing so, it deprived Trinity of water which it needed to operate. In its state suit against Marock, Trinity alleged that the diversion caused production and sales losses exceeding $150,000. Plaintiffs now seek a declaration that St. Paul has a duty to defend and to indemnify them in that underlying suit. Because the cross motions for summary judgment overlap, this Court will decide them simultaneously.

## II. ANALYSIS

### A. Standards for Summary Judgment.

■ Summary judgment is appropriate when, viewing the evidence in the light most favorable to the nonmoving party, the summary judgment record demonstrates that no genuine issue of material fact exists, and therefore, the moving party is entitled to judgment as a matter of law.[2] Here, where both parties have filed cross motions and neither disputes the material facts, summary judgment is particularly appropriate.

### B. Grounds for Summary Judgment.

■ When determining whether an insurer has a duty to defend a lawsuit against the insured, Texas law applies an "eight corners test."[3] The allegations made in the underlying complaint are compared with the terms of the insurance policy, and if any allegations fall within its coverage, a duty to defend arises. If an insurer has no duty to defend a specific lawsuit, it likewise bears no duty to indemnify the insured against any resulting adverse judgment.[4]

Here, the parties have focused upon two issues: 1) do the injuries to Trinity result from an insured "event?" and 2) do these injuries constitute covered "property damage?" Marock must prevail on both issues for this Court to find a duty to defend and indemnify. In support of that finding, Plaintiff argues that: 1) Trinity's allegations of negligence show the accidental nature of the harms and 2) Marock did not intend to inflict those harms. Defendant responds that: 1) whether Marock intended to injure Trinity is immaterial and 2) diverting a creek naturally reduces the water available downstream.

#### 1. The Policy

The general liability policy that St. Paul issued covers property damage, which it defines as "physical damage to tangible property of others, including all resulting loss of use of that property; or loss of use of tangible property of others that isn't physically damaged." St. Paul explains

---

**1.** *See Plaintiff's Appendix,* 55–57.

**2.** *See Celotex Corp. v. Catrett,* 477 U.S. 317, 322–24, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986).

**3.** *National Union Fire Ins. Co. v. Merchants Fast Motor Lines, Inc.,* 939 S.W.2d 139, 141 (Tex.1997).

**4.** *See Western Heritage Ins. Co. v. River Entertainment,* 998 F.2d 311, 315 (5th Cir.1993).

that it "consider[s] all loss of use of undamaged tangible property to happen at the time of the *event* which caused it." (emphasis added). "Event," for coverage purposes, is defined as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions."[5] This Court must ultimately determine whether Trinity's injuries are accidental.

### 2. The Underlying Lawsuit

■ Plaintiff contends that Trinity's allegation that Marock *negligently diverted* the waters of Big Sandy Creek relies upon an underlying legal theory of negligence, thus triggering St. Paul's duty to defend. Defendant responds that regardless of the wording of Trinity's complaint, the diversion was indisputably intentional, and that fact governs whether the policy applies. In *American States Ins. Co. v. Bailey*,[6] the Fifth Circuit affirmed the district court's grant of summary judgment for the insurers in a declaratory action. In concluding that sexual abuse and harassment by a church minister were not covered "occurrences," the appellate panel quoted *Adamo v. State Farm Lloyds Co.:* "It is not the cause of action alleged that determines coverage but the *facts* giving rise to the alleged actionable conduct."[7] Marock purposefully impounded Big Sandy Creek to screen and dredge construction materials. Thus, despite Trinity's allegations, the acts ultimately leading to underlying lawsuit were intentional, not negligent.[8]

■ Next, Plaintiffs argue that Marock never intended to injure Trinity. They assert that many complex factors prevent a lay person from anticipating what will happen when a river or stream is dammed: creek hydrology, the distance between users, the intended use of the water, etc. Marock therefore suggests that because it could not have foreseen the actual damages, much less their magnitude, the injury was accidental and creates a duty to defend.

St. Paul, however, responds that diverting upstream waters inevitably reduces the flow downstream. It contends that Trinity's injury was manifestly likely to happen, even if Marock denies knowing that other downstream users existed. Thus, although Marock might not have anticipated Trinity's specific injuries, it should reasonably have expected that someone would be injured. This Court must decide between these conflicting views of foreseeability.

### 3. The Applicable Law

■ In determining if an injury is accidental, the Texas Supreme Court instructs courts to look at "both the actor's intent and the reasonably foreseeable effect of his conduct ..."[9] There is no dispute that Marock intentionally diverted Big Sandy Creek. That fact, however, does not dispose of the second prong – whether the injuries were reasonably foreseeable.[10] The Texas Supreme Court has

---

5. *Defendant's Appendix*, Exh. 1, p. 2.

6. 133 F.3d 363, 369 (5th Cir.1998)(emphasis in original).

7. 853 S.W.2d 673, 676 (Tex.App.–Houston [14th Dist.] 1993, writ denied).

8. While the parties argue at length over the relevance of certain duty-to-defend cases drawn from construction disputes, those are ultimately inapplicable because the underlying facts in those cases involve negligent, and not intentional conduct.

9. *Lindsey*, 997 S.W.2d at 155.

10. "[T]he mere fact that 'an actor intended to engage in the conduct that gave rise to the injury' does not mean that the injury was not accidental." *Id.* (quoting *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 828 (Tex. 1997)).

held that an injury is accidental if "from the viewpoint of the insured, [it is] not the natural and probable consequence of the action or occurrence which produced the injury; or in other words, if the injury could not reasonably be anticipated by insured, or would not ordinarily follow from the action or occurrence which caused the injury."[11] In *Lindsey*, a five-year-old boy brushed against a loaded shotgun while climbing through the rear window of his father's pickup truck. The shotgun discharged, injuring two persons seated in a neighboring car. The Texas Supreme Court found – based upon the boy's intent to enter the vehicle – that the shooting was both unexpected and unintended. The *Lindsey* court also wrote, however, that even if "the result or injury may have been unexpected, unforeseen and unintended," an injury caused by voluntary and intentional conduct is not necessarily an accident.[12]

The reference to *Maupin* within the second sentence appears to narrow the otherwise broad understanding of "accident." In *Maupin*, the insured contracted to remove soil from private property, unaware that it had not contracted with the actual owner of the land. When the true owner sued for trespass, the Texas Supreme Court held that the trespass, although mistaken and perhaps erroneous, was not accidental. "[Plaintiffs] did what they intended to do by removing the borrow material from the property."[13] The critical difference between the general rule of *Lindsey* and the restrictive citation of *Maupin* is that while trespass can, given mistaken identity, ordinarily follow from the specific

acts of the insured, the shooting of two other persons does not ordinarily follow from entering a pickup cab.[14] In other words, mistaken factual assumptions, which are preventable, do not make the direct relationship between the removal of soil and the trespass somehow fortuitous or "freakish."

At the other end of the range of foreseeability, the Fifth Circuit determined, in *Meridian Oil Production v. Hartford Accident and Indemnity*,[15] that the natural and predictable consequences of intentional acts are not accidental events. The plaintiff, an oil production company, drilled on private property but dumped the well wastes into open pits, failed to properly encase the drill pipes, and failed to plug the well bores. These acts and omissions polluted the surrounding land and groundwater. When the landowner sued, the oil company sued for a declaration that its insurer was obligated to defend the suit.

The district court granted summary judgment for the insurance company, finding that no duty existed. The Fifth Circuit affirmed agreeing that the pollution "inevitably and predictably" resulted from the oil company's failure to take adequate protections. The panel further commented that even if the extent of the damages was "unexpected," the existence of damages was not; therefore, the pollution was not a covered "accident."[16]

Marock seeks a ruling that Trinity's injuries were not the natural and predictable result of diverting the creek; St. Paul seeks the opposite, that the general injury – a reduction in the amount of water

---

11. *Id.*

12. *Id.* (quoting *Argonaut Southwest Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex.1973)).

13. *Maupin*, 500 S.W.2d at 635.

14. At least when the person attempting to enter the pickup cab is a five-year-old boy.

15. 27 F.3d 150, 152 (5th Cir.1994).

16. *Id.* at 152.

available downstream – naturally and predictably followed from any upstream diversion. The underlying lawsuit alleges that Marock diverted Big Sandy Creek without a valid water permit. Although Marock claims that it did not know of any downstream users, that mere denial does not insulate Plaintiffs from potential responsibility.

 The existence of a water permit system in Texas reflects the fact that rivers and streams are a finite resource; a limited amount of a naturally flowing water must be shared among all potential users. Unless a means exists for equitably allocating the waters, an upstream party's use may soon interfere with a downstream party's rights and needs. A riparian owner does not have an unrestricted license to use the waters as he pleases, as if he were the only holder of riparian rights in a flowing stream. There is no evidence showing that Marock could justifiably and reasonably assume the absence of downstream water users. Therefore, although a party may not know the identity of potentially injured parties, the natural and predictable result of diverting or damming a river is a reduction of downstream waters, which could foreseeably harm downstream users.[17]

 Marock goes on to argue that it did not foresee Trinity's specific injuries. That may be well and true, but the law does not require foresight of specific details before a court may find that these injuries were not accidental. *Maupin* shows that Texas law recognizes a distinction between the inability to foresee *who* may be injured by an intentional act and the inability to foresee *how* an intentional act might generally injure others.

While no general duty of downstream investigation exists, one cannot overlook the economic and legal rationales for existing water management regimes. Finding Trinity's injuries to be accidental would create a serious moral hazard problem. By neglecting to either consult with water authorities or investigate the existence of downstream users, water users could shift all resulting costs and liabilities upon their insurers. The incentive to minimize the costs of one's actions would evaporate, and overall social costs would compound. On the other hand, acknowledging that general harms follow naturally from an upstream diversion encourages socially desirable behaviors – specifically, either obtaining a permit or investigating downstream impacts before diverting a river or stream.

 Public policy compels this Court to find that the existing water permit system suffices to inform water users that their upstream action have natural and probable downstream impacts. Ignorance of those consequences, whatever the cause, does not automatically render subsequent events fortuitous, random, or accidental. This Court finds that the Trinity's injuries predictably and naturally followed from the intentional upstream diversion of Big Sandy Creek. No accident has been shown, and no duty to defend exists. Because the same reasons that negate the duty to defend would also negate the duty to indemnify, the Court at this time finds there is no duty to indemnify as well.[18]

---

17. Even assuming that other downstream tributaries might have lessened the impact of Marock's diversion, the fact remains that damming upstream waters will reduce the downstream water flow.

18. *Farmers Texas County Mutual Ins. Co. v. Griffin*, 955 S.W.2d 81 (Tex.1997).

## CONCLUSION

Defendant has shown that Trinity's injuries naturally and foreseeably resulted from Marock's diversion of Big Sandy Creek, despite the absence of any specific intent to cause injury. Although the dam held water, Marock's attempt to base a duty to defend upon the absence of specific intent does not. The incident prompting Trinity's lawsuit is not a covered "event," and St. Paul bears no duty to defend that suit.

It is therefore superfluous for this Court to determine whether Trinity's damages constitute "property damage." The answer does not alter Defendant's entitlement to summary judgment on the duty to defend. Furthermore, because the same reasons negate carrier responsibility on both fronts, St. Paul has no duty to defend or duty to indemnify. Accordingly, Defendant's motion for summary judgment is **GRANTED**, and Plaintiffs' motion for summary judgment is **DENIED**.