# IN THE UNITED STATES COURT OF APPEALS

# FOR THE FIFTH CIRCUIT

———————————

m 01-10744
Summary Calendar

———————————

MARTIN MARIETTA MATL;
MARTIN MARIETTA MATERIALS SOUTHWEST, LTD.,
FORMERLY KNOWN AS MAROCK, INC.;
CONNIE SPRADLEY,

Plaintiffs-Appellants,

VERSUS

ST. PAUL FIRE AND MARINE INSURANCE COMPANY, ET AL.,

Defendants,

ST. PAUL GUARDIAN INSURANCE COMPANY,

Defendant-Appellee.

———————————

Appeal from the United States District Court
for the Northern District of Texas
m 3:00-CV-2585-X

———————————

January 31, 2002

Before JONES, SMITH, and
 EMILIO M. GARZA, Circuit Judges.

JERRY E. SMITH, Circuit Judge:[*]

———————————

[*] Pursuant to 5TH CIR. R. 47.5, the court has
(continued...)

St. Paul Fire and Marine Insurance Company ("St. Paul") insured Martin Marietta Matl ("Marock") and Connie Spradley under a commercial general liability policy that covered liability and legal expenses stemming from an "event" or "accident" but did not define "accident." Marock argues that its diversion of water from Big Sandy Creek without a water permit was an "accident" that resulted in unexpected property damage to downstream users. The district court held that the deliberate, unlawful act was not an accident, because property damage was the natural and probable result. Finding no error, we affirm.

## I.

Marock owned a facility that adjoined Big Sandy Creek. St. Paul provided primary general liability coverage for Marock and its officers. Trinity Materials, Inc. ("Trinity"), which held senior water rights to use water from the creek, operated a sand and gravel company downstream of Marock.

The complaint alleges that Marock, without a valid water permit, diverted the creek to dredge, wash, and screen sand and gravel for on-site construction, depriving Trinity of water that it needed to operate. In a suit in state court against Marock, Trinity alleged that the diversion had caused production and sales losses. Marock filed the instant federal action, seeking a declaration that St. Paul has a duty to defend and indemnify it in the state

litigation.[2] The parties filed cross-motions for summary judgment.

The district court granted St. Paul's motion for summary judgment, concluding that Trinity's petition in the state suit did not allege an "accident," which would be necessary to trigger St. Paul's duty to defend. The court held that the same facts that negated the duty to defend also negated the duty to indemnify. On appeal, Marock argues that Trinity's state petition alleges an "event" as defined by the policy.

## II.

Under Texas law, general principles of contract interpretation apply to insurance policies. *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 369 (5th Cir. 1999). State and federal courts follow the "complaint allegation" or "eight corners" rule when determining an insurer's duty to defend.[3] If the petition does not allege facts within the scope of coverage, an insurer is not legally required to defend a suit brought against its insured. *Trinity Universal Ins. Co. v. Cowan*, 945 S.W.2d 819, 821 (Tex. 1997). We construe the pleadings in favor of the insured. *Heyden*, 387 S.W.2d at 26.

---

*(...continued)
determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

[2] This statement of the facts is taken almost verbatim from the district court's opinion. *Martin Marietta Materials Southwest, Ltd. v. St. Paul Guardian Ins. Co.*, 145 F. Supp. 2d 794, 796 (N.D. Tex. 2001). The parties agree that the district court's statement of facts is accurate. Appellant's Br. at 5 (stating that the only flaw is the conclusion that Marock acted "intentionally"); Appellee's Br. at 2-3 (accepting district court's statement).

[3] *Potomac Ins. Co. v. Jayhawk Med. Acceptance Corp.*, 198 F.3d 548, 550 (5th Cir. 2000); *Heyden Newport Chem. Corp. v. S. Gen. Ins. Co.*, 387 S.W.2d 22, 24, 26 (Tex. 1965).

The general commercial liability policy protects Marock from liability for an "event," which the policy defines as "an accident, including continuous or repeated exposure to substantially the same general harmful conditions." Texas and federal courts applying Texas law to insurance contracts often have considered the definition of "accident."

The Texas Supreme Court most recently summarized the test for determining whether an insured's actions constitute an accident in *Mid-Century Ins. Co. v. Lindsey*, 997 S.W.2d 153, 155 (Tex. 1999), explaining that "both the actor's intent and the reasonably foreseeable effect of his conduct bear on the determination of whether an occurrence is accidental." The court described, in an ambiguous passage, the importance of the insured's intent, stating that "voluntary and intentional conduct is not an accident just because 'the result or injury may have been unexpected, unforeseen, and unintended.'" *Id.* (citation omitted). The court, however, went on to say that "the mere fact that 'an actor intended to engage in the conduct that gave rise to the injury' does not mean that the injury was not accidental." *Id.* (citation omitted).

These paradoxical statements reflect an underlying tension in Texas law. Some Texas courts have held that the insured's commission of an intentional tort or intentionally unlawful act bars finding an accident, regardless of the consequences.[4] Other Texas courts have held

that commission of an intentional tort bars finding an accident only for the "natural and probable consequence" of the action.[5] In *Lindsey*, 997 S.W.2d at 155, the court cited both lines of cases with approval.

Unsurprisingly, St. Paul argues that the intentional and unlawful acts should bar finding an accident. Marock, on the other hand, reasons that intentional acts bar a finding of accident only for the natural and probable consequences of the act. Marock contends that unpredictable and unforeseeable consequences are covered accidents.

We need not resolve this tension. Regardless of whether intent is dispositive, Texas courts have been extremely reluctant to declare the consequences of an unlawful act as accidental. *Trinity Universal*, 945 S.W.2d at

---

[4] *Federated Mut. Ins. Co. v. Grapevine Excavation, Inc.*, 197 F.3d 720, 723 (5th Cir. 1999) ("[D]amage that is the natural result of voluntary and intentional acts is deemed not to have been caused by an occurrence, no matter how unexpected, unforeseen, and unintended that (continued...)

---

[4](...continued)
damage may be."); *Argonaut Southwest Ins. Co. v. Maupin*, 500 S.W.2d 633, 635 (Tex. 1973) (unknowing trespass classified as an intentional tort that gave rise to liability).

[5] *Meridian Oil Prod., Inc. v. Hartford Accident & Indem. Co.,* 27 F.3d 150, 152 (5th Cir. 1994) (considering recklessness of oil rig operator's behavior leading to spill and natural consequences of spill); *Trinity Universal*, 945 S.W.2d at 827-28 (considering relevant but not dispositive the insured's intent to make illegal copies of photograph and violate plaintiff's privacy); *Hartrick v. Great Am. Lloyds Ins. Co.*, No. 01-99-00215, 2001 WL 870072, at *5 (Tex. App.SSHouston [1st Dist.] 2001, no pet.) ("Intent or lack of intent is not dispositive of coverage."); *Collier v. Allstate County Mut. Ins. Co.*, No. 2-00-116-CV, 2001 WL 629307, at * 5 (Tex. App.SSFort Worth 2001, no pet.) (stating that objective natural consequence standard applies to the results of an intentional act).

827-28. Where the type but not the extent of the damages is predictable, Texas courts refuse to classify the act or its effects as an "accident."[6]

Marock deliberately diverted the water for the construction project and did so without water rights, which made its action unlawful. Marock faces a heavy burden to show that the consequences of its actions were so unpredictable or bizarre as to make them accidental.

The district court correctly held that when an upstream user usurps a downstream user's water rights, the upstream user should foresee damage to the downstream user. Marock could foresee that diversion would harm downstream commercial users, even if it did not know the particular effects; that it did not foresee the particular harm is irrelevant. Marock's diversion and its consequences were not an "accident" within the meaning of the policy.

Marock argues that by linking the term "accident" to foreseeability, the district court made liability policies useless. Marock avers that because foreseeability is an element of many torts, the petition often will allege foreseeability and will prevent the insured from claiming coverage. This argument is premised on a misunderstanding of Texas insurance and tort law.

First, Marock ignores the distinction that Texas law defining "accidents" makes between negligence and intentional torts. Marock cites out-of-state cases for the proposition that a foreseeability test would eliminate insurance for negligence.[7] Texas courts, however, have been more willing to classify the consequences as improbable and covered in the case of the insured's simple negligence; those courts have been less likely to find an accident and coverage where the insured has acted intentionally; they have been least likely to find accident and coverage where the insured deliberately has violated the law.[8]

Favoring coverage for negligence rather than intentional torts makes good sense. An insurance company is less likely to contract to protect the insured from the natural and probable consequences of his deliberate decision to break the law. That would create a enormous moral hazard. An insurance company can, however, much more easily monitor and assist an insured who is seeking to avoid simple negligence.[9] The Texas courts have interpreted liability contracts in the way most likely to fulfill the parties' intent.

---

[6] *Meridian Oil*, 27 F.3d at 152 (describing pollution as "natural and probable" consequence of reckless oil rig operation even though specific impact might not be foreseeable); *Wessinger v. Fire Ins. Exch.*, 949 S.W.2d 834, 841 (Tex. App.SSDallas 1997, no pet.) ("Simply because the degree of injury suffered may have been great does not make the specific type of injury alleged any less a natural result of the act.").

[7] Appellant's Reply Br. at 4-5 (citing *Sheets v. Brethren Mut. Ins. Co.*, 679 A.2d 540 (Md. 1996); *City of Carter Lake v. Aetna Cas. & Sur. Co.*, 604 F.2d 1052 (8th Cir. 1979)).

[8] *Compare, e.g., Mass. Bonding & Ins. Co. v. Orkin Exterminating Co.*, 416 S.W.2d 396, 400-01 (Tex. 1967) (negligent application of pesticides); *Meridian Oil*, 27 F.3d 152 (reckless failure to take precautions to keep oil rig from leaking); *Maupin*, 500 S.W.2d at 635 (trespass).

[9] Seth J. Chandler, *Visualizing the Moral Hazard*, 1 CONN. INS. L.J. 97, 135-36 (1995) (describing limits on liability coverage as a means for insurers to reduce moral hazard).

Second, regardless of the competing policy arguments, Texas courts have chosen to impose a requirement that to count as an "accident," intentional torts must lead to an unforeseeable type of harm. Because this case is brought pursuant to diversity jurisdiction, we have an obligation to apply Texas law as state courts would apply it, regardless of the policy consequences.[10]

Marock argues that because Trinity alleges negligence in the state petition, we should consider Marock's diversion non-intentional. In Texas, negligent acts that create improbable consequences are accidents.[11] Texas courts also have held, however, that the facts, rather than legal theories alleged in the state petition, should determine the insured's intent. Where a state petition alleges facts that could support theories of both negligence and intentional torts, Texas courts will consider the insured's actions intentionally unlawful.[12] Despite

Trinity's allegations of negligence, the state petition alleges that negligence arises from Marock's deliberate, unlawful acts. Those underlying acts drive our "accident" analysis, as described above.

III.

The district court held that St. Paul did not have the duty to defend or indemnify. *Martin Marietta*, 145 F. Supp. 2d at 800. On appeal, Marock argues that the district court prematurely resolved the question of indemnification.

In *Farmers Tex. County Mut. Ins. Co. v. Griffin*, 955 S.W.2d 81, 84 (Tex. 1997), the court held that a trial court can resolve the indemnification question at summary judgement if "no set of facts could be developed" to create a cause of action for indemnification. The court held that the petition's allegations of a drive-by shooting never could state a claim for an "accident." *Id.*

The duty to defend is broader than the duty to indemnify. *State Farm Lloyds v. Borum*, 53 S.W. 3d 877, 889 (Tex. App.SSDallas 2001, pet. denied). In most cases in which the underlying petition does not state factual allegations sufficient to create a duty to

---

[10] *Klaxon Co. v. Stentor Elec. Mfg. Co.*, 313 U.S. 487, 497 (1941) (stating that "the proper function of [a] federal court is to ascertain what the state law is, not what it ought to be").

[11] *E.g.*, *Harken Exploration Co. v. Sphere Drake Ins. PLC*, 261 F.3d 466, 474 (5th Cir. 2001) (concluding that negligent oil leak that contaminated water, killed cattle, and destroyed land had unpredictable effects that could be considered accidental); *Hartford Cas. v. Cruse*, 938 F.2d 601, 604-05 (5th Cir. 1991) (classifying extensive damage from negligent failure properly to level house as accidental); *Mass. Bonding*, 416 S.W.2d at 400-01 (holding that negligent application of pesticide that had cumulative, toxic effects was an accident).

[12] *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 371-72 (5th Cir. 1998) (stating that alleged sexual misconduct giving rise to intentional tort and neg-
(continued...)

[12](...continued)
ligence claims should be considered an intentional tort for purposes of defining as an accident); *Folsom Investments, Inc. v. Am. Motorists Ins. Co.*, 26 S.W.3d 556, 559 (Tex. App.SSDallas 2000, no pet.) (stating that "negligence that is related to and interdependent on claims of intentional conduct does not constitute" an accident); *King v. Dallas Fire Ins. Co.*, 27 S.W.3d 117, 123 (Tex. App.SSHouston [1st Dist.] 2000, pet. granted) (same); *Freedman v. Cigna Ins. Co. of Texas*, 976 S.W.2d 776, 779 (Tex. App.SSHouston [1st Dist.] 1998, no pet.) (same).

defend, there is no duty to indemnify. *Id.*

The district court held that the state petition could never state a claim for an accident. Marock does not isolate a single fact or legal theory that would transform the deliberate diversion of water into an "accident." We cannot envision such a development at trial, so summary judgment was appropriate.

AFFIRMED.