**MIDDLE SOUTH ENERGY, INC. and New Orleans Public Service Inc., Plaintiffs-Appellants,**

v.

**The CITY OF NEW ORLEANS and the Council of the City of New Orleans, Defendants-Appellees.**

No. 85–3619.

United States Court of Appeals, Fifth Circuit.

Sept. 24, 1986.

---

Charles W. Lane, III, Joseph P.H. Babington, Herschel L. Abbott, Jr., New Orleans, La., for plaintiffs-appellants.

Bruce E. Naccari, Michael L. Martin, Asst. City Atty., Thomas W. Milliner, Beverly Jackson Zervigon, Salvador Anzelmo, New Orleans, La., for defendants-appellees.

Before BROWN, REAVLEY, and JONES, Circuit Judges.

EDITH HOLLAN JONES, Circuit Judge:

New Orleans Public Service, Inc. (NOPSI), an electrical utility company serving the City of New Orleans (City), appeals from the denial of declaratory and injunctive relief aimed at preventing the City from exercising an option to purchase the utility. Because the district court properly concluded that the dispute is not ripe for adjudication, we AFFIRM.

NOPSI has provided electric power to the City since 1922 under a franchise agreement that gives the City the option to purchase NOPSI's electrical facilities.[1] NOPSI is a wholly owned subsidiary of Middle South Utilities (MSU), a public utility holding company, which also owns power companies in Arkansas, Louisiana, and Mississippi. Middle South Energy (MSE) was formed by MSU to finance and construct the Grand Gulf nuclear power plant in Mississippi. Begun in the early 1970's, Grand Gulf Unit One was near completion at the time this lawsuit commenced. According to reports, NOPSI's customers will be faced with a substantial increase in their electric bills because of Grand Gulf's cost overruns.

Concerned about the projected rate increases for New Orleans residents, the City, in 1983, began exploring the option of acquiring NOPSI, as provided by the 1922 franchise agreement. The City created a task force to study and make recommendations about the option; it hired a consultant to determine the feasibility of the purchase; it created an agency, the New Orleans Public Power Authority (NOPPA), to which the assets of NOPSI could be transferred in case the City decides to exercise its option; and it successfully presented to the voters a referendum returning regulatory control over NOPSI's retail rate structure from the state power commission to the City Council. The City has also initiated several lawsuits in state court to prevent NOPSI from in-

---

1. Under the terms of the franchise, contained in Ordinance Nos. 6822 and 7068, C.C.S. (Apr. 21, 1922; Sept. 2, 1922), the City granted NOPSI an indeterminate franchise in exchange for an option to acquire NOPSI's electrical facilities. The reservation by the City of the right to purchase is required by state law, when a franchise grant is of indeterminate length. *La.Rev.Stat.Ann.* § 33:4405.

creasing the "rate base" value of its properties by incorporating its participation in Grand Gulf into the rate base, a move which would increase the City's purchase price if the option is exercised.[2] The City has, however, stopped short of exercising its option, as it can only do by formal vote of the Council.

As has been its wont in this on-going dispute over the starcrossed Grand Gulf project, the utility brought suit in federal court, seeking, this time, a declaration that the City's acquisition of NOPSI, free of NOPSI's share of the Grand Gulf project, (1) is necessarily qualified and limited by federal statute and regulation governing interstate utility operations; (2) would impermissibly burden interstate commerce; and (3) if done without FERC's approval, would violate Section 203 of the Federal Power Act, 16 U.S.C. § 824b. MSE and NOPSI also sought an injunction against the City's exercising its purchase option or attempting to regulate power contracts among the various MSU units.[3] The district court dismissed the action for lack of subject matter jurisdiction on the ground that, until the City actually decides to exercise its option, there is no actual case or controversy between the parties within the meaning of article III of the Constitution and the Declaratory Judgment Act, 28 U.S.C. § 2201.

██ A federal court may not issue a declaratory judgment unless there exists an "actual controversy," i.e., there must be a substantial controversy of sufficient immediacy and reality between parties having adverse legal interests. *Maryland Cas. Co. v. Pacific Coal & Oil Co.*, 312 U.S. 270, 273, 61 S.Ct. 510, 512, 85 L.Ed. 826 (1941); *Johnson v. Onion*, 761 F.2d 224, 225 (5th Cir.1985); *Wolfer v. Thaler*, 525 F.2d 977, 979 (5th Cir.), *cert. denied*, 425 U.S. 975, 96 S.Ct. 2176, 48 L.Ed.2d 800 (1976). This requirement is a cautionary one, designed to

> prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements over administrative policies, and also to protect agencies from judicial interference until an administrative decision has been formalized.

*Abbott Laboratories v. Gardner*, 387 U.S. 136, 148, 87 S.Ct. 1507, 1515, 18 L.Ed.2d 681 (1967). Further, because the City made a "factual attack" on the pleadings in the trial court, NOPSI was required to prove the existence of subject-matter jurisdiction by a preponderance of the evidence. *Paterson v. Weinberger*, 644 F.2d 521, 523 (5th Cir.1981).

██ NOPSI has failed to bear these twin burdens. NOPSI contends that, although the City has not yet exercised its option, its actions and threatened actions have made the dispute over the respective rights and obligations of the parties under the agreement appropriate for declaratory relief at this time. No matter how divergent the parties' views of their rights and obligations under the option may be, the district court correctly found that NOPSI has failed to show that the controversy is ripe for adjudication. The City Council chairman testified that the Council has no present intent to purchase NOPSI's facilities, but has merely undertaken steps to maintain and preserve its legal rights under the option. The actions taken thus far bear him out. The Task Force report rec-

---

**2.** Exercising the option to municipalize will apparently be economically viable only if the City can acquire NOPSI free of NOPSI's interest in Grand Gulf. On June 13, 1985, FERC ordered that NOPSI be assigned 17 percent of the costs, capacity and energy of Grand Gulf. The remainder was allocated among MSU's other operating companies: Arkansas Power & Light, 36 percent; Louisiana Power & Light, 14 percent; and Mississippi Power & Light, 33 percent. *Middle South Energy, Inc.*, 31 FERC (CCH)

¶ 61,305 (June 13, 1985) ("Opinion No. 234"). This Order was appealed to the D.C. Circuit.

**3.** This action is, in essence, a rerun of NOPSI's claims in *New Orleans Public Service, Inc. v. City of New Orleans*, 782 F.2d 1236 (5th Cir.1986), *vacated in part*, 798 F.2d 858 (5th Cir.1986), i.e., that FERC's allocation of the costs of Grand Gulf must be immediately accepted without further scrutiny by the City and "passed-through" to the customer.

ommends that the City exercise its option, but until the recommendation is formally implemented by vote of the Council, it remains a recommendation. NOPPA exists only on paper and has yet to be funded or staffed. The voter referendum returning regulatory authority to the Council was also an anticipatory move. The subject matter of various lawsuits brought by the City and the Council represent reasonable steps to preserve and maintain their legal right to exercise the purchase option, and are not tantamount to an exercise of the option. Although considerable public-relations pugilism has been engaged in by both sides to bolster their respective bargaining positions, it would be imprudent indeed to base the determination of federal jurisdiction on such statements, which amount to premature speculation concerning extreme positions that each side could adopt in the future.

When and how the Council exercises its option, if it ever does, are the critical determinants of the propriety of federal court jurisdiction over this matter. Until the City Council actually votes to exercise the purchase option, we must be careful to "avoid imposition under [our] jurisdiction through obtaining futile or premature interventions, especially in the field of public law." *Public Service Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 243, 73 S.Ct. 236, 240, 97 L.Ed. 291 (1952). *See also Golden v. Zwickler*, 394 U.S. 103, 89 S.Ct. 956, 22 L.Ed.2d 113 (1969).

AFFIRMED.