REVISED - June 9, 2000

**UNITED STATES COURT OF APPEALS**
**FIFTH CIRCUIT**

———————

No. 99-11038

———————

ORIX CREDIT ALLIANCE, INC.,

Appellant,

versus

FRANK A. WOLFE, JR. and LEXIE D. WOLFE,

Appellees.

Appeal from the United States District Court
For the Northern District of Texas

June 2, 2000

Before REAVLEY, SMITH, and EMILIO M. GARZA, Circuit Judges.

EMILIO M. GARZA, Circuit Judge:

Orix Credit Alliance, Inc. ("OCAI") appeals the district court's (1) dismissal of its Complaint for Issuance of Preliminary Injunction, Permanent Injunction and Declaratory Judgment (the "declaratory judgment complaint"), and (2) denial of its subsequent motion for leave to amend the declaratory judgment complaint. For the reasons set forth below, we vacate the judgment of the

district court and remand with instruction to dismiss OCAI's complaint as unripe for adjudication.

I

The declaratory judgment complaint is the most recent filing in a long and complicated history of litigation between OCAI, ABC Utilities Services, Inc. ("ABC Utilities"), ABC Asphalt, Inc. ("Asphalt"), and Utilities Equipment Leasing Company, Inc. ("UELCO") (collectively, "the ABC entities"). Between 1984 and 1989, OCAI, a commercial finance company, entered into a series of secured lease and finance transactions with UELCO and Asphalt to finance the acquisition of construction equipment (the "financing transactions"). ABC Utilities, the parent company of Asphalt and UELCO, guaranteed the debts of these entities to OCAI. Frank Wolfe is the president and sole director of ABC Utilities, UELCO and Asphalt. Lexie Wolfe is Frank Wolfe's mother.

In April 1989, the ABC entities filed for bankruptcy under Chapter 11. In October 1989, the ABC entities filed a complaint in federal district court against OCAI alleging, *inter alia*, that some of the transactions between OCAI and the ABC entities were usurious ("ABC I"). In May 1993, the district court granted summary judgment in favor of OCAI. The ABC entities' subsequent motion for a new trial and to set aside the judgment was denied.

Shortly thereafter, in July 1993, the ABC entities commenced an adversary proceeding against OCAI in the bankruptcy court on behalf of the bankruptcy Trustee alleging, *inter alia*, fraud on the part of OCAI in the transactions with the ABC entities ("ABC II"). In ABC II, the entitites raised several issues that they had previously raised in ABC I. Accordingly, the district court withdrew its reference to the bankruptcy court, and the case was transferred to the district court. In January 1994,

the district court granted summary judgment in favor of OCAI on the grounds of *res judicata*.[1]  In

May 1995, we affirmed the judgments of the district court in both ABC I and ABC II and held that

the ABC entities were not entitled to relief under Fed. R. Civ. P. 50(b)(3) or (b)(6).

During this time period, related actions were proceeding in the bankruptcy court.  After the

ABC entities filed for chapter 11 bankruptcy, OCAI began filing motions for relief from the automatic

stay provision of 11 U.S.C. § 362 against Asphalt and UELCO in which OCAI asserted that it was

owed a specific amount by the ABC entities. In opposing OCAI's third motion for relief in November

1991,[2] UELCO stated that it owed OCAI approximately $150,000 less than OCAI claimed it was

owed.  The bankruptcy court held an evidentiary hearing during which it heard testimony concerning

the amount of money owed OCAI by Asphalt and UELCO.  Ultimately, the bankruptcy court granted

OCAI's third motion for relief from the stay and rendered findings of fact specifying the amount owed

to OCAI.

Frank Wolfe and a creditor of UELCO subsequently filed objections to OCAI's claims against

the bankruptcy estates of the ABC entities, alleging that OCAI overstated the amount that it was

owed by UELCO and Asphalt (the "Objections to Claims").  In February 1996, the bankruptcy court

granted OCAI's motion for summary judgment, dismissing the Objections to Claims on the basis of

*res judicata*.  Specifically, the court found that the judgments in ABC I and ABC II and the judgment

of the bankruptcy court on the third motion to lift the stay barred the objections.

Later that year, Frank Wolfe retained attorney Bruce Budner and commenced a malpractice

---

[1]    The district court found that "[t]here is no question that the claims asserted in this action are the same claims asserted in [ABC I] . . . which was denied adversely to the Plaintiffs therein."

[2]    OCAI's first two motions for relief were denied.

action in Texas state court on behalf of the bankruptcy estates of the ABC entities against several of the attorneys who had represented the entities throughout this litigation (the "Malpractice Action"). Wolfe alleged that as a result of the attorneys' malpractice, the ABC entities lost their claims against OCAI. Several disputes arose between OCAI and the ABC entities as a result of the latter's discovery requests. Budner litigated several disputes and was able to obtain some discovery from OCAI. Ultimately, OCAI and the ABC entities entered into a settlement resolving these disputes, which was approved by the state court (the "OCAI Settlement").

After the state court approved the settlement, Budner filed a motion to approve the OCAI Settlement in the bankruptcy court. Wolfe, however, retained new counsel and opposed the OCAI Settlement. Wolfe also noticed the deposition of his former attorney Budner and issued a subpoena *duces tecum* seeking to compel Budner to turn over the documents that OCAI had produced in the Malpractice Action. OCAI filed an emergency motion for a protective order and to quash both subpoenas. The Wolfes filed a motion in opposition in which they stated that "the documents which Bruce A. Budner will produce at the deposition will support a Motion for Reconsideration by Frank A. Wolfe and his mother, Lexie D. Wolfe" of the denial of the Objections to Claims. As an exhibit to their opposition papers, the Wolfes attached a draft of a motion to set aside the judgment on the Objections to Claims (the "draft motion").[3] The bankruptcy court denied the motion to quash, and OCAI sought leave to file an interlocutory appeal of that ruling.[4]

---

[3] We note that neither party has included a copy of the draft motion in its record excerpts. Nor are we able to locate a copy of the motion in the record on appeal.

[4] Ruling on the motion to appeal the bankruptcy court's discovery ruling, the district court refused to stay the deposition and document production for the pendency of the appeal and ordered that the document productions proceed subject to a confidentiality order essentially identical to the order in the state court case. Budner's deposition went forward in October 1998.

Finally, in December 1998, OCAI filed this declaratory judgment complaint. The complaint alleged that the threatened claim in the draft motion sought to reopen issues that were barred under the doctrine of *res judicata* by ABC I, ABC II, our decision affirming these cases, and the final order of the bankruptcy court. OCAI sought relief in the form of: (1) a declaratory judgment stating that "any and all claims, objections to claims, actions and proceeding which arise out of or relate in any way to the relationship between ORIX Credit Alliance, Inc. and ABC Asphalt, Inc. and/or Utilities Equipment Leasing Co., Inc., and/or ABC Utilities Services, Inc. are barred by *res judicata* and other doctrines of claim and issue preclusion"; (2) a declaratory judgment that "any and all claims against OCAI relating to transactions between OCAI and the ABC entities are estopped"; and (3) a preliminary and permanent injunction "enjoining Frank A. Wolfe, Lexie D. Wolfe, and all other persons and entities in privity with either as an owner, officer, and/or creditor of any ABC Entity, or acting in concert with them, from commencing, pursuing, or prosecuting any claim, objection, action, or proceeding, however denominated, against ORIX Credit Alliance, Inc., its successors and assigns, arising out of or relating to any transaction between or involving OCAI and ABC Asphalt, Inc., and/or Utilities Equipment Leasing Co., Inc. and/or ABC Utilities Services, Inc. and requiring them to return the documents to OCAI in accordance with the Confidentiality Order and the Settlement entered by the [state court]."

The Wolfes moved to dismiss, alleging that no actual controversy existed between them and OCAI. The district court granted the Wolfes' motion to dismiss on different grounds. Specifically, the court found that there was an actual controversy between the Wolfes and OCAI based upon the threatened action. However, the district court exercised its discretion to abstain from hearing the

declaratory judgment complaint.[5]

In June 1999, OCAI filed a motion for reconsideration of the district court's dismissal, which also sought leave to amend the declaratory judgment complaint so as to invoke bankruptcy court jurisdiction. The district court denied the motion, and OCAI filed this timely appeal.[6]

OCAI now argues that the district court abused its discretion by dismissing the declaratory judgment complaint. Alternatively, OCAI contends that the district court erred in denying it leave to amend the declaratory judgment complaint so as to assert bankruptcy jurisdiction.

II

When considering a declaratory judgment action, a district court must engage in a three-step inquiry. First, the court must determine whether the declaratory action is justiciable. Typically, this becomes a question of whether an "actual controversy" exists between the parties to the action. *See Rowan Co., Inc. v. Griffin*, 876 F.2d 26, 27-28 (5th Cir. 1989). A court's finding that a controversy exists such that it has subject matter jurisdiction is a question of law that we review *de novo*. *See Canion v. Evans*, 196 F.3d 579, 584 (5th Cir. 1999). Second, if it has jurisdiction, then the district court must resolve whether it has the "authority" to grant declaratory relief in the case presented. *See Travelers Ins. Co. v. Louisiana Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 776 (5th Cir. 1993) ("Prior to determining whether the district court abused its discretion by failing to review the merits of this case, this Court must first determine whether the district court had authority to grant a declaratory judgment here."). Third, the court has to determine how to exercise its broad discretion

---

[5]     The court also denied OCAI's interlocutory appeal of the bankruptcy court's discovery rulings.

[6]     In September 1999, the bankruptcy court entered an order approving the OCAI Settlement.

to decide or dismiss a declaratory judgment action. *See id.* at 778 (recognizing a district court's vast discretion in the declaratory judgment context). We review the dismissal of a declaratory judgment action for abuse of discretion. *See Wilton v. Seven Falls Co.*, 41 F.3d 934, 935 (5th Cir. 1994). Here, the district court erred in moving beyond the first step of this inquiry.

While none of the parties challenge the ripeness of the declaratory judgment complaint on appeal, we have a duty to consider objections to our jurisdiction *sua sponte*. *See United Transp'n Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000) ("[E]very federal appellate court has a special obligation to 'satisfy itself not only of its own jurisdiction, but also that of the lower courts in a cause under review,' even though the parties are prepared to concede it.") (citation omitted); *see also Abbott Labs v. Gardner*, 387 U.S. 136, 148-49, 87 S. Ct. 1507, 18 L. Ed. 2d 681 (1967) ("Ripeness is a constitutional prerequisite to the exercise of jurisdiction."). In *New Orleans Public Service, Inc. v. Council of New Orleans*, 833 F.2d 583 (5th Cir. 1987), we set out the standard for determining whether a dispute is ripe for adjudication in this circuit:

> A court should dismiss a case for lack of 'ripeness' when the case is abstract or hypothetical. The key considerations are 'the fitness of the issues for judicial decision and the hardship to the parties of withholding court consideration.' A case is generally ripe if any remaining questions are purely legal ones; conversely, a case is not ripe if further factual development is required.

*Id.* at 586-87 (quoting *Abbott Labs.* 387 U.S. at 149, 87 S. Ct. 1507 (holding that a ripeness determination considers (1) fitness for review, and (2) hardship to parties of withholding judicial consideration)).

Many courts have recognized that applying the ripeness doctrine in the declaratory judgment context presents a unique challenge. *See, e.g., Rhode Island v. Narragansett Indian Tribe*, 19 F.3d 685, 692 (1st Cir. 1994) ("Applying this [*Abbott Labs*] test in the declaratory judgment context often

requires custom tailoring, for there are at least two salient differences between declaratory actions and the mind-run of other cases: first, declaratory relief is more likely to be discretionary; and, second, declaratory actions contemplate an 'ex ante determination of rights' that 'exists in some tension with traditional notions of ripeness'") (citations omitted)).  Nonetheless, a declaratory judgment action, like any other action, must be ripe in order to be justiciable.  *See United Transp. Union v. Foster*, 205 F.3d 851, 857 (5th Cir. 2000) ("Declaratory judgments are typically sought before a completed 'injury-in-fact' has occurred . . .  but still must be limited to the resolution of an 'actual controversy.'") (citation omitted).

A declaratory judgment action is ripe for adjudication only where an "actual controversy" exists.  *See* 28 U.S.C. § 2201(a) ("In a case of *actual controversy* within its jurisdiction . . . any court of the United States . . . may declare the right and other legal relations of any interested party seeking such declaration.") (emphasis added); *Texas v. West Publ'g. Co.*, 882 F.2d 171, 175 (5th Cir. 1989). As a general rule, an actual controversy exists where "a substantial controversy of sufficient immediacy and reality [exists] between parties having adverse legal interests." *Middle South Energy, Inc. v. City of New Orleans*, 800 F.2d 488, 490 (5th Cir. 1986) *see generally West Publ'g. Co.*, 882 F.2d at 175 (noting that the "case or controversy" requirement of Article III of the United States Constitution is "identical to the actual controversy requirement under the Declaratory Judgment Act.").  Whether particular facts are sufficiently immediate to establish an actual controversy is a question that must be addressed on a case-by-case basis.  *See Mobil Oil Corp. v. Oil, Chem. & Atomic Workers Int'l Union,* 483 F.2d 603 (5th Cir. 1973); 10B Charles A. Wright, et al., FEDERAL PRACTICE AND PROCEDURE § 2757, at 470 (1984).

Here, the district court found that an "actual controversy" existed such that it had jurisdiction

to consider the declaratory judgment complaint. We disagree.  The "controversy" that OCAI seeks to resolve through a declaratory judgment and injunction is largely, if not purely, hypothetical.  *See United Transp. Union,* 205 F.3d at 857 (holding that a declaratory judgment action is premature where a controversy is "abstract or hypothetical").  OCAI seeks a *res judicata* ruling barring not only the filing of the draft motion, but all future actions arising out of or related to the financing transactions.  The content of the broad class of potential claims that OCAI seeks to bar, and the certainty that any of these claims will ever be filed, are wholly unknown.  Future claims could raise any number of issues—some of which may never have been litigated in prior actions—or they could never be filed at all.  Such unasserted, unthreatened, and unknown claims do not present an immediate or real threat to OCAI such that declaratory relief is proper.  *See Middle South Energy*, 800 F.2d at 490.

The district court based its determination that an actual controversy existed on the "potential litigation which can arise in the bankruptcy court."  Indeed, in its pleadings, OCAI appears to root its entire "actual controversy" argument in the threatened draft motion.  While this presents a somewhat closer question, we do not believe that the possibility that this motion will be filed is sufficiently immediate and real so as to constitute a justiciable controversy. *See Middle South Energy*, 800 F.2d at 490.

The threat of litigation, if specific and concrete, can indeed establish a controversy upon which declaratory judgment can be based.  *See Nucor Corp. v. Acertos y Maquilas de Occidente,* 28 F.3d 572, 578 (7th Cir. 1994) (finding that once a buyer sent "notice letter" informing manufacturer that suit would be filed in state court if dispute was not resolved, disagreement was no longer an abstract question and therefore was ripe for adjudication); *see also Texas v. West Publ'g. Co.*, 882 F.2d at

176 (finding that, in the intellectual property context, an actual controversy exists "(1) when the declaratory plaintiff has a real and reasonable apprehension of litigation and (2) when the declaratory plaintiff has engaged in a course of conduct that brings it into adversarial conflict with the declaratory defendant"). The fact that the filing of the lawsuit is contingent upon certain factors does not defeat jurisdiction over a declaratory judgment action. *See Assoc'd Indem. Corp. v. Fairchild Indus., Inc.*, 961 F.2d 32, 35 (2d Cir. 1992); 10B Charles A. Wright, et al., FEDERAL PRACTICE AND PROCEDURE § 2757, at 476 (1984) ("It is clear that in some instances a declaratory judgment is proper even though there are future contingencies that will determine whether a controversy ever actually becomes real."). However, in determining whether a justiciable controversy exists, a district court must take into account the likelihood that these contingencies will occur. *See Associated Indem. Corp.*, 961 F.2d at 35 ("That the liability may be contingent does not necessarily defeat jurisdiction of a declaratory judgment action . . .. Rather, courts should focus on the 'practical likelihood that the contingencies will occur.'") (citation omitted). Thus, the ripeness inquiry "focuses on whether an injury that has not yet occurred is sufficiently likely to happen to justify judicial intervention." *Chevron U.S.A., Inc. v. Trailour Oil Co.,* 987 F.2d 138, 1153 (5th Cir. 1993).

In this case, whether or not the Wolfes will ever file the draft motion hinges upon several contingencies. Specifically, in order to file the motion, the Wolfes must discover documents in the Budner subpoena production that support a claim to reconsider their Objections to Claims. At this point in the litigation, the types of documents that would allow the Wolfes to file a credible motion for reconsideration are few.[7] At oral argument, the Wolfes conceded that in order to file such a

---

[7] It is worthy of notice that in the eleven years since the Wolfes first filed suit against OCAI, they have been unable to uncover documents to support their claims. It is also noteworthy that the documents that the Wolfes subpoenaed from Budner were, presumably, available to the

-10-

motion after the final ruling of the bankruptcy court, the Budner production would have to include documents demonstrating that OCAI engaged in "fraud . . . misrepresentation, or some other misconduct." Fed. R. Civ. P. 60(b). OCAI simply fails to allege facts that show that these contingencies are likely to occur. *See West Publ'g. Co.*, 882 F.2d at 175 (holding that party suing for declaratory relief bears burden on proving, by a preponderance of the evidence, that an actual controversy exists); *cf. Texas v. United States,* 523 U.S. 296, 300, 118 S. Ct. 1257 (1998) ("A claim is not ripe for adjudication if it rests upon 'contingent future events that may not occur as anticipated, or indeed may not occur at all.'") (citation omitted).

Using *res judicata* to bar the Wolfes from filing the draft motion is particularly problematic. The precise legal issues that the Wolfes will raise in the motion are unclear at this time. The proposed motion for reconsideration was attached, in draft form, as an exhibit to the Wolfes' opposition to OCAI's motion to quash the Budner subpoenas.[8] Clearly, the contours of that motion could, and likely would, change depending upon, amongst other things, the content of the subpoena production. At this point, we cannot say that the threatened dispute has "taken on final shape so that the court can see what legal issues it is deciding." *El Paso Building & Constr. Trades Council v. El Paso Chapter Ass'n General Contractors of America*, 376 F.2d 797, 800 (5th Cir. 1967). Consequently, a ruling on the declaratory judgment complaint would essentially amount to an opinion advising the parties what the law would be should the Wolfes (1) find documents that support a motion to reconsider, and (2) assert the legal issues that they included in the draft motion written two

Wolfes throughout the Malpractice Action and yet did not prompt them to file a motion for reconsideration at that time.

[8]     We reiterate that we have not had the opportunity to review the draft motion. *See supra* note 3.

years ago. See *Life Partners, Inc. v. Life Ins. Co. of N. America*, 203 F.3d 324, 325 (5th Cir. 1999) ("Federal courts do not render advisory opinions.").[9]

In sum, we find that the district court erred in finding that an "actual controversy" existed such that the court had jurisdiction to consider the declaratory judgment complaint.[10] Because no such controversy exists, OCAI's declaratory judgment action is not ripe for adjudication. Accordingly, we VACATE the judgment of the district court and REMAND with instruction to dismiss the complaint as unripe.[11]

---

[9] The procedural posture of this case—OCAI's filing of a declaratory judgment complaint to obtain a *res judicata* ruling—raises some more general concerns. Generally speaking, *res judicata* is an affirmative defense to a case that has been filed. *See* Fed. R. Civ. P. 8(c); *cf. Warnock v. Pecos Cty.*, 116 F.3d 776, 778 (5th Cir. 1997) (noting that *res judicata* is generally an affirmative defense that courts generally should not raise sua sponte). In one sense, the ruling that OCAI seeks is premature, given that the Wolfes have not actually filed a lawsuit. In another sense, a *res judicata* ruling—which can be used to determine the liability rights of the parties—is moot, given that the rights of the parties were already resolved in ABC I and ABC II. However, because we base our decision on the fact that OCAI's claim is not ripe for adjudication, we need not resolve the question of whether a party can ever use a declaratory judgment to enforce *res judicata*.

[10] Nor do we think that withholding judicial consideration of this action presents a hardship to the parties. *See Abbott Labs.*, 387 U.S. at 149 (holding that key consideration in ripeness doctrine is "hardship to parties of withholding court consideration); *United Transp. Union*, 205 F.3d at 857 (same). The only immediate hardship that OCAI suffers from a decision to withhold court review is that they will continue to worry that the Wolfes will file another lawsuit relating to the financing transactions. Should this come to pass, and should the Wolfes in fact raise issues that have been previously litigated, then OCAI can file a motion to dismiss, alleging *res judicata* and seeking an injunction barring future litigation of the same issues. We believe that this is the proper, and not onerous, course of action under the circumstances.

[11] Since we find that the declaratory judgment complaint is not ripe for adjudication, OCAI's claim that the district court erred in denying it leave to amend the complaint so as to assert bankruptcy court jurisdiction is moot.