# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

March 20, 2017

Lyle W. Cayce
Clerk

No. 16-20122

SASOL NORTH AMERICA, INCORPORATED; SASOL TECHNOLOGY
(PTY) LIMITED; SASOL ENERGY (USA), L.L.C.,

       Plaintiffs - Appellants

v.

GTLPETROL, L.L.C.,

       Defendant - Appellee

Appeal from the United States District Court
for the Southern District of Texas
USDC No. 4:13-CV-2918

Before HIGGINBOTHAM, JONES, and HAYNES, Circuit Judges.

EDITH H. JONES, Circuit Judge:*

Sasol North America, Inc., Sasol Technology Limited, and Sasol Energy, L.L.C. ("Sasol") and GTLPetrol, L.L.C. ("Petrol") at one point pursued working together and discussed information concerning Petrol's developments in the area of gas-to-liquid (GTL) conversion technology. The relationship fell apart and both companies continued to pursue their separate business interests. Sasol announced plans for a GTL plant in Louisiana. Petrol threatened legal

---

     * Pursuant to 5TH CIR. R. 47.5, the court has determined that this opinion should not be published and is not precedent except under the limited circumstances set forth in 5TH CIR. R. 47.5.4.

No. 16-20122

action for patent infringement, misappropriation of Petrol's trade secrets, and breach of the parties' confidentiality agreement. Sasol used the threats to seek a declaratory judgment, but its claims became moot when Sasol put the Louisiana GTL plant's development on hold and the patent was due to expire before the plant could be built. The district court dismissed the case without prejudice. Sasol challenges the dismissal, arguing that claims unrelated to the Louisiana plant survive as live controversies under the Declaratory Judgment Act ("DJA"). We affirm. The district court correctly determined that this declaratory judgment action does not present a live controversy.

**I**

Sasol and Petrol both participate in the GTL conversion industry. Sasol operated plants in South Africa, Qatar, and Nigeria, and was considering expanding into the United States. During Sasol's expansion process it met with Petrol (in 2010 and 2011) and signed confidentiality agreements stemming from their discussions of GTL technology owned by Petrol. Six weeks after the initial meeting between the companies the conversations were terminated. In December 2012, Sasol announced that it would be building a GTL plant in Louisiana. In January 2013, Sasol made a presentation at the World GTL Congress in Qatar. Shortly thereafter, Petrol sent an initial cease-and-desist letter to Sasol. The letter indicated that Petrol was concerned about patent infringement, misappropriation of trade secrets, and breach of confidentiality, and that these concerns related to both the 2013 presentation and the development of the new facility in Louisiana. The parties were unable informally to resolve their dispute.

Petrol threatened possible litigation—"we will have no other option than to pursue GTLpetrol's legal remedies in appropriate forums." Sasol determined instead to file for a declaratory judgment in October 2013 claiming that: it did not violate the confidentiality agreement, misappropriate trade

2

secrets, or infringe on the patent, and the patent was invalid. After the court rejected Petrol's motion to dismiss, Petrol filed mandatory counterclaims for recovery.

Then the price of oil fell by more than half. In January 2015, Sasol notified Petrol and the district court that the Louisiana plant's development was on "indefinite hold." As a result of the indefinite hold, Sasol stated that the Louisiana plant would not come on-line until after Petrol's patent expired—effectively mooting counts 3 and 4 of Sasol's complaint and the corresponding mandatory counterclaims. Sasol and Petrol agreed that the patent claims should therefore be dismissed.

Sasol still sought declaratory relief on the state law claims for misappropriation of trade secrets and breach of confidentiality. Petrol moved to dismiss the case as no longer ripe. The district court initially denied Petrol's motion to dismiss, but two days later reconsidered its order in a conference with the parties and soon after issued an amended order dismissing all of the claims for lack of subject matter jurisdiction.

The amended order relied on the fact that "counsel for Defendant [Petrol] advised the Court that it did not intend to pursue claims relating to past" misappropriations or breaches. The court then held that "there is no substantial controversy of sufficient immediacy to warrant declaratory judgment on the remaining claims."

Excluding the patent and state law claims relating to the Louisiana plant, two remain. Count 1 of Sasol's amended complaint alleges that Petrol threatened breach of confidentiality actions based on generic "alleged misuse and disclosure of Petrol information" aside from any breach concerning the Louisiana plant. Petrol's mandatory counterclaim asserts a breach of confidentiality relating to the January 2013 presentation in Qatar and the

development of the "Lake Charles Facility (and other proposed GTL facilities throughout the world)."

In Count 2, Sasol argues that Petrol has threatened action for trade secret misappropriation based on the January 2013 trade show presentation. Petrol's mandatory counterclaim confines the alleged misappropriation to "design and construction of the Lake Charles Facility (and possibly other facilities throughout the world)."

Sasol challenges on appeal the district court's dismissal of the remaining non-Louisiana plant-related allegations as non-justiciable.

## II

"A federal court may not issue a declaratory judgment unless there exists an actual controversy." *Am. States Ins. Co. v. Bailey*, 133 F.3d 363, 368 (5th Cir. 1998) (quotation omitted). "The Supreme Court directs that the dispute must be definite and concrete, real and substantial, and admit of specific relief through a decree of a conclusive character." *Vantage Trailers, Inc. v. Beall Corp.*, 567 F.3d 745, 748 (5th Cir. 2009). Further, the Supreme Court has "repeatedly held that an actual controversy must exist not only at the time the complaint is filed, but through all stages of the litigation." *Already, LLC v. Nike, Inc.*, 133 S.Ct. 721, 726 (2013) (quotations omitted).

District courts engage in a three-step analysis when determining whether a declaratory judgment action should proceed. *Orix Credit All., Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). "First, the court must determine whether the declaratory action is justiciable . . . . A court's finding that a controversy exists such that it has subject matter jurisdiction is a question of law that we review *de novo*." *Id.* (citation omitted). "Second, if it has jurisdiction, then the district court must resolve whether it has the 'authority' to grant declaratory relief in the case presented" *Id.* (citation omitted). "Third, the court has to determine how to exercise its broad discretion to decide or

dismiss a declaratory judgment action." *Id.* (citation omitted). This third step is reviewed for abuse of discretion. *Id.* In this case, the district court dismissed the claims for lack of subject matter jurisdiction, a question of justiciability, therefore, it is appropriate to apply a *de novo* standard of review.

### III

In the declaratory judgement context, "the question in each case is whether the facts alleged, under all the circumstances, show that there is a substantial controversy, between parties having adverse legal interests, of sufficient immediacy and reality to warrant the issuance of a declaratory judgment." *MedImmune, Inc. v. Genentech, Inc.*, 549 U.S. 118, 127, 127 S.Ct. 764, 771 (2007). What remains of counts 1 and 2 of the appellant's amended complaint are allegations not related to the suspended Louisiana GTL plant.

Sasol focuses first on the mandatory counterclaim's discussion of the hypothetical (and parenthetical) unauthorized use of Petrol's trade secrets in other facilities throughout the world. Based on the record developed in the court below, any such misappropriation is nothing more than theoretical at this time and cannot be the basis for a controversy of sufficient reality. The counterclaims do not specify any other particular plants where Sasol may be using or planning to use Petrol's technology, nor does Sasol identify another facility where it is using or contemplating use of the same types of technology that spawned the Louisiana plant dispute. In the absence of any concrete allegation of misuse, the court had no reason to suspect that these claims are of sufficient immediacy or reality to justify litigating a declaratory judgment proceeding.

Next up on Sasol's list of disputes is its exposure for a misappropriation of trade secrets claim based on the January 2013 presentation and the generic threat of breach of confidentiality alleged in Count 1 of the amended complaint. Louisiana law requires that "[a]n action for misappropriation must be brought

within three years after the misappropriation is discovered or by the exercise of reasonable diligence should have been discovered." La. Stat. Ann. § 51:1436. It bears noting that the claim relating to the January 2013 presentation is likely time-barred.  Even if it is not, however, ripeness requires a substantial controversy of sufficient immediacy and a purely inconsequential, several-year-old disclosure claim clearly is not such a claim.  Beyond that, Sasol furnishes no examples of disclosures by or on its behalf that could be considered to have breached the confidentiality agreement.

Finally, Sasol cites Petrol's references to the "possibl[e] other facilities throughout the world" where technology misappropriation may have aided Sasol's design and construction, and Petrol's generic potential threats of breach of confidentiality.  Sasol offers no facts about further potential disclosure violations, however, and such claims are either contingent on Petrol's later discovery of such facts, or they are hypothetical.  Regardless, they are not ripe for adjudication.  It is entirely possible they may never become ripe, and Petrol's claim to protecting trade secrets now almost a decade old has to diminish over time.

The district court was correct to dismiss this case for lack of subject matter jurisdiction, and dismissal can be justified on ripeness grounds. Without the live claims relating to the Louisiana plant, all that remained were Petrol's claims for hypothetical and unspecified potential infringements in other plant development projects and the appellant's concerns about potential disclosure claims stemming from the 2013 presentation.  As discussed, these claims do not compel continuation of the declaratory judgment action before the district court.

The court tersely articulated its dismissal in terms of Petrol's representation, which this court takes as a judicial admission, that it has no intention of pursuing litigation on these remaining claims, which does not

present an issue.  First, this court reviews the district court's entire order, which clearly references the full test for cognizance of declaratory judgment actions.  See *MedImmune, supra, (*cited by the district court).  We presume that the district court was aware that the remaining state law claims were either hypothetical or inconsequential.  Second, because of the deficiencies of the remaining claims, this case does not raise the issues considered by the Supreme Court in *Already v Nike.  Already, LLC v. Nike, Inc.*, 133 S. Ct. 721 (2013).  *Already* concerned the parties' interest in pursuing, or preventing, further litigation over trademark infringement.  The crux of the Petrol-Sasol dispute, in contrast, was patent infringement, the claims for which were mooted by Sasol's unilateral decision to suspend development of the Louisiana GTL plant.  Whereas Nike just decided not to pursue trademark infringement further and entered into a covenant not to sue that formed the basis for its mootness claim, Petrol did not voluntarily cease defending its patent, and Sasol's suspension of the Louisiana plant actually ensured that no further controversy could occur—because the patent would expire before that plant, if ever revived, were built.  Given the insubstantiality, likely time bars, and lack of ripeness of the state law claims here, those claims would be the tail wagging the dog if they were to prevent the district court from being able to properly dismiss this declaratory judgment case.

Further, neither side is prejudiced by the dismissal because a new suit can always be filed later, including a new declaratory judgment action, should potential claims that present a "substantial controversy of sufficient immediacy and reality" arise.  *Venator Grp. Specialty, Inc. v. Matthew/Muniot Family, LLC.*, 322 F.3d 835, 838 (5th Cir. 2003).

## Conclusion

For the foregoing reasons, the judgment of the district court is **AFFIRMED**.

7

No. 16-20122

HAYNES, Circuit Judge, concurring in the judgment only:

I do not agree that the district court lacked subject matter jurisdiction to proceed. However, I concur in the judgment of the court affirming the dismissal of this case because the district court has broad discretion in deciding whether to determine or dismiss a declaratory judgment action. *Orix Credit All., Inc. v. Wolfe,* 212 F.3d 891, 895 (5th Cir. 2000); *see also Travelers Ins. Co. v. La. Farm Bureau Fed'n, Inc.*, 996 F.2d 774, 778 (5th Cir. 1993). The facts of this case place it within that broad discretion.