# United States Court of Appeals for the Fifth Circuit

United States Court of Appeals
Fifth Circuit

**FILED**

July 25, 2023

Lyle W. Cayce
Clerk

No. 21-51038

_____

Consumer Data Industry Association,

*Plaintiff—Appellee*,

*versus*

State of Texas, *through Attorney General Ken Paxton, acting in his official capacity*,

*Defendant—Appellant*.

_____

Appeal from the United States District Court
for the Western District of Texas
USDC No. 1:19-CV-876

_____

Before Graves, Willett, and Engelhardt, *Circuit Judges*.[*]

Per Curiam:[**]

Defendant-Appellant, the State of Texas, through Attorney General Ken Paxton ("Paxton"),[1] appeals the district court's determination that the

_____

[*] Judge Willett concurs in the judgment only.

[**] This opinion is not designated for publication. *See* 5th Cir. R. 47.5.

[1] On July 14, 2023, Texas Governor Greg Abbott appointed Angela Colmenero to serve as Interim Attorney General for the State of Texas pending the Texas Senate's resolution of the articles of impeachment filed against Ken Paxton. *See* Press Release,

No. 21-51038

*Ex parte Young* exception to sovereign immunity applies, that Plaintiff-Appellee Consumer Data Industry Association ("CDIA") has standing, and that CDIA's claim is ripe for review. On the instant record, we AFFIRM.

I.

Plaintiff-Appellee CDIA is an international trade association that represents the three nationwide credit reporting agencies ("CRAs")—Experian, Equifax, and Trans Union—and other credit reporting agencies that furnish information concerning Texas consumers. On September 9, 2019, CDIA sued Texas Attorney General Ken Paxton, in his official capacity, contending that Section 20.05(a)(5) of the Texas Business & Commerce Code is preempted by the Federal Fair Credit Reporting Act ("FCRA"), 15 U.S.C. § 1681, *et seq.*, and seeking declaratory and injunctive relief. The Texas statutory provision, § 20.05(a)(5), prohibits CRAs from including information regarding certain medical debt collection accounts in consumer credit reports that are furnished to third-parties. Tᴇx. Bᴜs. & Cᴏᴍ. Cᴏᴅᴇ § 20.05(a)(5).

Defendant-Appellant Paxton filed motions to dismiss, pursuant to Federal Rules of Civil Procedure 12(b)(1) and 12(b)(6), contending that (1) CDIA has not suffered an "injury in fact" and thus lacks standing; (2) CDIA's claim is not ripe for review; (3) the State of Texas is entitled to sovereign immunity from suit; and (4) § 20.05(a)(5) is not preempted by the FCRA. On September 28, 2021, the district court denied the motions. Considering the prospective nature of the relief sought by CDIA, and CDIA's factual allegations, the district court determined that *Ex parte Young*'s exception to sovereign immunity applies, CDIA has Article III

---

Office of the Texas Governor (July 10, 2023), https://gov.texas.gov/news/post/governor-abbott-appoints-angela-colmenero-as-interim-attorney-general-of-texas.

No. 21-51038

standing, and its claim is ripe for review. In rejecting the Rule 12(b)(6) motion, the district court reasoned that CDIA had sufficiently alleged express preemption because the state and federal statutory provisions concern the same subject matter. This interlocutory appeal followed.[2]

## II.

The statutory provision that CDIA claims is preempted by federal law, and thus seeks to enjoin its enforcement—Section 20.05(a)(5) of the Texas Business and Commerce Code—was enacted in 2019 and became effective on May 31, 2019. It prohibits CRAs from including information regarding certain medical debt collection accounts in consumer credit reports that are furnished to third-parties. Specifically, § 20.05(a)(5) states:

> (a) Except as provided by Subsection (b), a consumer reporting agency ["CRA")] may not furnish a consumer report containing information related to:
>
> * * *
>
> (5) a collection account with a medical industry code, if the

---

[2] This court's appellate jurisdiction is generally limited to appeals from "final decisions." *See* 28 U.S.C. § 1291. However, "beginning with *Cohen v. Beneficial Industrial Loan Corp.,*[337 U.S. 541, 548–49 (1949)], the Supreme Court has recognized narrow exceptions to this rule under what is now termed the collateral-order doctrine." *Planned Parenthood Gulf Coast, Inc. v. Phillips*, 24 F.4th 442, 448 (5th Cir. 2022). "The collateral-order doctrine permits appeals of interlocutory orders that '[1] conclusively determine the disputed question, [2] resolve an important issue completely separate from the merits of the action, and [3] [are] effectively unreviewable on appeal from a final judgment.'" *Id.* (quoting *Coopers & Lybrand v. Livesay*, 437 U.S. 463, 468 (1978)). When dismissal on grounds of sovereign immunity is denied, interlocutory appeal is permitted under the *Cohen* collateral-order doctrine. *Id.* at 448–50. Given the significant overlap in the issues presented in this appeal, we also will review the district court's interlocutory rulings regarding standing and ripeness. *See, e.g.*, *City of Austin v. Paxton*, 943 F.3d 993, 1003 n. 3 (5th Cir. 2019) (declining to consider standing on interlocutory appeal of sovereign immunity ruling but citing cases where standing was considered). The same is not true, however, of the district court's preemption ruling.

No. 21-51038

consumer was covered by a health benefit plan at the time of the event giving rise to the collection and the collection is for an outstanding balance, after copayments, deductibles, and co-insurance, owed to an emergency care provider or a facility-based provider for an out-of-network benefit claim[.]

Tex. Bus.& Com. Code § 20.05(a)(5).

Enforcement of the provisions of Chapter 20 of the Texas Business and Commerce Code—which is entitled "Regulation of Consumer Credit Reporting Agencies"—is addressed in Subchapter D, §§ 20.08–20.13. Notably, both consumers and the Texas Attorney General are granted enforcement authority. A consumer may file an enforcement action in court or, if agreed to by the parties, submit the matter to binding arbitration. Tex. Bus. & Com. Code § 20.08(a).[3] If the CRA's violation is *willful*, the CRA is liable to the consumer against whom the violation occurred for the greater of three times the amount of the consumer's actual damages or $1,000, as well as reasonable attorney fees and court or arbitration costs. *Id.* § 20.09(a).[4] If a CRA *negligently* violates the chapter, it can be liable to the consumer for the greater of the actual amount of damages or $500, as well as reasonable attorney fees and court or arbitration costs. *Id.* § 20.09(b).

---

[3] If the consumer prevails in arbitration and the disputed adverse information in the consumer's file or record is not stricken or removed in a timely manner, the consumer may bring an action against the noncomplying CRA without regard to the 120-day waiting period otherwise required by § 20.08(d) for successive arbitrations. Tex. Bus. & Com. Code § 20.08(f).

[4] In addition to liability imposed under § 20.09(a), a consumer reporting agency that does not correct inaccurate information in a consumer's file and consumer report before the 10th day after the date on which a judgment is entered against the agency is also liable for $1,000 a day until the inaccuracy is corrected. Tex. Bus. & Com. Code § 20.09(c).

No. 21-51038

The Texas Attorney General's enforcement power relative to § 20.05(a)(5) is found in §§ 20.11 and 20.12. Section 20.11 states:

> **§ 20.11 Injunctive Relief; Civil Penalty**
>
> (a) The attorney general may file a suit against a person for:
>
> (1) injunctive relief to prevent or restrain a violation of this chapter; or
>
> (2) a civil penalty in an amount not to exceed $2,000 for each violation of this chapter.
>
> (b)  If the attorney general brings an action against a person under Subsection (a) and an injunction is granted against the person or the person is found liable for a civil penalty, the attorney general may recover reasonable expenses, court costs, investigative costs, and attorney's fees.
>
> (c) Each day a violation continues or occurs is a separate violation for purposes of imposing a penalty under this section.

TEX. BUS.& COM. CODE § 20.11.  Section 20.12 adds, relative to the Texas Deceptive Trade Practices Act–Consumer Protection Act:

> **§ 20.12  Deceptive Trade Practice**
>
> A violation of this chapter is a false, misleading or deceptive act or practice under Subchapter E, Chapter 17.

TEX. BUS.& COM. CODE § 20.12; TEX. BUS.& COM. CODE § 17.41, *et seq*.

As stated in the district court's order, CDIA's First Amended Complaint includes the following allegations:

- Some CDIA members *currently* include in their reports Medical Account Information that the Statute *now prohibits*.

- The State has the authority to enforce the Statute and *has never agreed not to enforce it* against CDIA members.

No. 21-51038

- Absent a declaration that the Statute is preempted by the FCRA, CDIA members will be forced to make material changes to their day-to-day business operations to comply with the Statute, including making changes to products currently provided in Texas.

- CDIA members which maintain Medical Account Information will have to undertake significant efforts and adopt processes to: (i) identify any information that would be implicated by the Statute; (ii) take steps to assure the removal of such data from their files or otherwise prevent such data from being included in consumer reports provided in Texas; and (iii) manage the collection of such information from the furnishers in the future to prevent its appearance.

- These remediation efforts require material investments of time and resources. Similar undertakings regarding other changes to the credit reporting system have taken members years to complete.

*See* September 28, 2021 District Court Order at 5 (citing First Amended Complaint, ¶¶ 5-6, 8, 10, 18, 20, 25–28, 30–34 (emphasis added)). For purposes of this appeal, the factual allegations in the complaint are accepted as true.

## III.

On appeal, Paxton challenges the district court's sovereign immunity, standing, and ripeness rulings. We review the district court's standing and ripeness determinations de novo. *Ctr. for Individual Freedom v. Carmouche*, 449 F.3d 655, 659 (5th Cir. 2006). The same is true for the district court's jurisdictional determination of sovereign immunity. *City of Austin v. Paxton*, 943 F.3d 993, 997 (5th Cir. 2019). "If the district court resolves any factual disputes in making its jurisdictional findings, the facts expressly or impliedly found by the district court are accepted on appeal unless the findings are clearly erroneous." *Pederson v. Louisiana State Univ.*, 213 F.3d 858, 869 (5th Cir. 2000).

No. 21-51038

In this instance, our decision regarding standing also is determinative of Paxton's assertions of error regarding the district court's sovereign immunity and ripeness rulings. Thus, although it is the district court's sovereign immunity ruling that provides interlocutory appellate jurisdiction,[5] we will address Article III standing first.

## IV.

Article III of the United States Constitution permits federal courts to decide certain "cases" and "controversies." *Choice Inc. of Texas v. Greenstein*, 691 F.3d 710, 715 (5th Cir. 2012); U.S. CONST., art. III, § 2. And, "the justiciability doctrines of standing, mootness, political question, and ripeness all originate from Article III's 'case' or 'controversy' language." *Greenstein*, 691 F.3d at 715 (internal quotation marks deleted). "A question of standing raises the issue of whether the plaintiff is entitled to have the court decide the merits of the dispute or of particular issues." *Pederson*, 213 F.3d at 869 (quoting *Cook v. Reno*, 74 F.3d 97, 98–99 (5th Cir. 1996)). Standing must exist at the time suit is filed. *Id.*[6]

"[T]he irreducible constitutional minimum of standing consists of three elements." *Lujan v. Defs. of Wildlife*, 504 U.S. 555, 560 (1992). "The plaintiff must have (1) suffered an injury in fact, (2) that is fairly traceable to the challenged conduct of the defendant, and (3) that is likely to be redressed by a favorable judicial decision." *Spokeo, Inc. v. Robins*, 578 U.S. 330, 338 (2016), *as revised* (May 24, 2016). To establish Article III standing, an alleged "injury in fact" must be "concrete, particularized, and actual or imminent." *Clapper v. Amnesty Intern. USA*, 568 U.S. 398, 409 (2013). The district court,

---

[5] *See* note 1, *supra*.

[6] The mootness doctrine, in contrast, considers whether the present or threatened injury required for standing *continues* to exist. *See Friends of the Earth, Inc. v. Laidlaw*, 528 U.S. 167, 189–94 (2000) (distinguishing standing and mootness).

No. 21-51038

accepting CDIA's allegations as true, concluded that CDIA had satisfied Article III's requirement of an "injury in fact" and thus had "associational standing" to bring this pre-enforcement judicial action, on behalf of its members, seeking declaratory and injunctive relief relative to Texas Business and Commerce Code § 20.05(a)(5).[7]

On appeal, Paxton challenges this determination, contending CDIA's assertion that the Texas Attorney General will seek to enforce § 20.05(a)(5) by filing a suit seeking injunctive relief or a civil penalty, pursuant to §§ 20.11 and 20.12, is likewise "purely speculative" and, thus, insufficient to provide the "injury in fact" required for Article III standing. In making this assertion, Paxton emphasizes the absence of any formal enforcement proceedings undertaken, or threatened, by the Texas Attorney General since § 20.05(a)(5) became effective on the May 31, 2019 enactment date. Based on that history, Paxton also argues that the operational changes that CDIA's members allegedly must make (to comply with § 20.05(a)(5)) are not traceable to actions by the Texas Attorney General. Lastly, Paxton contends that enjoining the

---

[7] As noted by the district court, an association has standing to sue on behalf of its members when "(a) its members would otherwise have standing to sue in their own right; (b) the interests it seeks to protect are germane to the organization's purpose; and (c) neither the claim asserted nor the relief requested requires the participation of individual members in the lawsuit." *Hunt v. Wash. State Apple Advert. Comm'n*, 432 U.S. 333, 343 (1977). Participation of individual members generally is not required when the association seeks prospective or injunctive relief, as opposed to damages. *United Food & Commercial Workers Union Local 751 v. Brown Grp., Inc.*, 517 U.S. 544, 546 (1996). Paxton's standing challenge focuses solely on the requirement that CDIA's members "would otherwise have standing to sue in their own right." Notably, the presence of any *one* party with standing as to each claim satisfies Article III's case-or-controversy requirement. *Rumsfeld v. Forum for Acad. & Inst. Rights, Inc.*, 547 U.S. 47, 52 n. 2 (2006); *Bowsher v. Synar*, 478 U.S. 714, 721 (1986); *Brackeen v. Haaland*, 994 F.3d 249, 291 (5th Cir. 2021) *rev'd in part on other grounds*, 143 S. Ct. 1609 (2023). Still, a plaintiff must establish standing for each form of relief sought. *See Transunion, LLC v. Ramirez*, 141 S. Ct. 2190, 2210 (2021) (standing to seek injunctive relief does not necessarily establish standing to seek retrospective damages).

No. 21-51038

Texas Attorney General's enforcement of § 20.05(a)(5) will not redress CDIA's injury because consumers still will be able to enforce the provision's requirements by suing, under §§ 20.08 and 20.09, for damages.

An allegation of future injury may establish standing if the threatened injury is "certainly impending or there is a substantial risk that the harm will occur." *Susan B. Anthony List v. Driehaus*, 573 U.S. 149, 158 (2014) (quoting *Clapper*, 568 U.S. at 414 n.5). Here, CDIA does not allege that the Texas Attorney General has threatened any of its members with enforcement, issued warning letters, or formally announced an intent to enforce the statute. On the other hand, the Texas Attorney General has *never* stated or even suggested that the statute would *not* be enforced in the future. Indeed, in Attorney General Opinion No. KP-0367, issued on April 13, 2021, in response to a query from the San Patricio County Attorney, Paxton opined regarding the likelihood that a court would conclude that the prohibition set forth in § 20.05(a)(5) applies to a certain type of health plan. *See* Tex. Atty. Gen. Op. KP-0367 (Apr. 13, 2021), 2021 WL 2803919. Significantly, nonenforcement of the prohibition is never mentioned.

Paxton's submissions to the district court and this court likewise lack a clear statement of intent regarding future enforcement of § 20.05(a)(5) despite the obvious materiality of that information. Given the ease by which this point could be clarified by the Texas Attorney General—thereby enlightening federal courts, state courts, the Texas Legislature, the Texas Governor, Texas voters, CRAs, consumers, debt collection agencies, health care providers, health care insurers, etc.—the omission is telling.

This is particularly true given that the risk of harm to CDIA's members is decidedly different from pre-enforcement cases in which standing was lacking because the plaintiff was not within the class of persons to whom the statute in question applied, or the statute had such general

9

applicability that the likelihood of its future application vis-à-vis the plaintiff was aptly described as little more than mere possibility or speculation. Here, in contrast, the statutory provision in question, § 20.05(a)(5), is *expressly* directed to CRAs, *i.e.*, CDIA's members, and no one else. *Cf. Contender Farms, L.L.P. v. U.S. Dep't of Agric.*, 779 F.3d 258, 264 (5th Cir. 2015) ("If a plaintiff is an object of a regulation 'there is ordinarily little question that the action or inaction has caused him injury, and that a judgment preventing or requiring the action will redress it.'") (quoting *Lujan*, 504 U.S. at 561)). Furthermore, CDIA alleges that some of its members *currently* include information in their reports that § 20.05(a)(5) prohibits.

Nor, moreover, is the statute moribund such that standing is absent because there is no reasonable fear of enforcement. *See, e.g., Mayle v. State of Illinois*, 956 F.3d 966 (7th Cir. 2020) (plaintiff lacked standing to challenge Illinois' "archaic" adultery and fornication laws because they were no longer enforced but remained in statute books "'as a residue of legislative inertia.'") (quoting *Peña v. Mattox*, 84 F.3d 894, 900 (7th Cir. 1996)). To the contrary, § 20.05(a)(5) was enacted *less than five years ago*, because of, according to Paxton, legislative "concern[s] about the damaging effects of credit of in-sured individuals whose medical bills appeared past-due based on no fault their own." *See* Appellant's Brief, at 5; *see also* 2019 Texas Senate Bill No. 1037, Senate Research Center Bill Analysis.[8]

In the First Amendment context, courts addressing similar circum-stances "will assume a credible threat of prosecution [or enforcement] in the absence of compelling contrary evidence." *See Turtle Island Foods, S.P.C. v. Strain*, 65 F.4th 211, 218 (5th Cir. 2023); *Barilla v. City of Houston, Texas*, 13

---

[8]    (https://capitol.texas.gov/tlodocs/86R/analysis/html/SB01037F.htm (last visited July 24, 2023).

F.4th 427, 433–34 (5th Cir. 2021); *Speech First*, *Inc. v. Fenves*, 979 F.3d 319, 335 (5th Cir. 2020); *cf. Babbitt v. United Farm Workers Nat. Union*, 442 U.S. 289, 302 (1979) (though criminal penalty provision had not yet been applied, state had not disavowed any intention of invoking it). On this record, we will do the same.

Accordingly, given that CDIA has sufficiently alleged that certain members must either make material operational changes to comply with § 20.05(a)(5), or expose themselves to a substantial threat of enforcement by the Texas Attorney General, pursuant to §§ 20.11 and 20.12, we agree that CDIA has alleged the requisite "injury in fact" required for standing. *See*, *e.g.*, *Abbott Labs. v. Gardner*, 387 U.S. 136, 1553–54 (1967) (plaintiffs had standing to challenge regulation that was directed at them and required significant changes in everyday business practices because noncompliance exposed them to the imposition of strong sanctions); *MedImmune v. Genentech*, *Inc.*, 549 U.S. 118, 129 (2007) (having to "[choose] between abandoning [] rights or risking prosecution—is 'a dilemma that it was the very purpose of the Declaratory Judgment Act to ameliorate'") (quoting *Abbott Labs.*, 387 U.S. at 152)).

Paxton's assertion that the alleged injury is *not* traceable to actions by the Texas Attorney General, but is instead "self-inflicted," fails for essentially the same reasons. *See Federal Election Comm'n v. Cruz*, 142 S. Ct. 1638, 1647 (2022) (injury remained fairly traceable to government actor despite plaintiffs' having knowingly triggered election statute because plaintiffs were subject to the challenged provision and faced legal penalties for non-compliance); *id.* (distinguishing *Clapper* on grounds that the plaintiffs there could not show that they were likely to be subjected to the challenged

government policy).[9]

Finally, Paxton's contention that enjoining the Texas Attorney General's enforcement of § 20.05(a)(5) will not redress CDIA's injury—because consumers will still be able to enforce the provision's requirements by suing, under §§ 20.08 and 20.09, for money damages—likewise lacks merit. While it is true that an injunction directed to the Texas Attorney General would not in itself preclude consumers from seeking relief under §§ 20.08 and 20.09, it would reduce the total amount of risk and liability that CDIA's members face by failing to comply with § 20.05(a)(5). Such a reduction satisfies the redressability required to establish standing. *See Sanchez v. R.G.L.*, 761 F.3d 495, 506 (5th Cir. 2014) ("When 'establishing redressability, [a plaintiff] need only show that a favorable ruling could potentially lessen its injury; it need not definitively demonstrate that a victory would completely remedy the harm.'") (quoting *Antilles Cement Corp. v. Fortuno*, 678 F.3d 310, 318 (1st Cir. 2012)).[10] And, if an injunction is upheld

---

[9] Paxton's reliance on *Clapper* to support this argument is particularly problematic. As explained therein, the plaintiffs in *Clapper*—various attorneys and human rights, labor, legal, and media organizations—challenged a federal statute that allowed the United States Attorney General and the Director of National Intelligence to obtain foreign intelligence information by authorizing electronic surveillance of individuals who are *not* "United States persons" and are reasonably believed to be located outside of the United States. The plaintiffs, as "United States persons" were *not* the intended target of the statute. Finding standing to be lacking, the Supreme Court emphasized that the alleged injury (the likelihood that the plaintiffs' communications with foreign contacts would be intercepted at some point in the future) relied upon "highly speculative fear" and "a highly attenuated chain of possibilities" that included the discretionary decisions and uncertain conduct of multiple third parties. *See Clapper*, 568 U.S. at 402, 407–20. Additionally, even before the statute in question was enacted, the plaintiffs in *Clapper* "had a similar incentive to engage in many of the ['costly and burdensome'] countermeasures" that they claimed were necessitated by the challenged statute. *Id.* at 407, 417–18.

[10] The parties' briefs do not discuss whether, for purposes of evaluating standing, the separate statutory enforcement provisions available to the Texas Attorney General and consumers yield two separate injuries, rather than one. Nor is it apparent whether that

against the Texas Attorney General on grounds of federal preemption, that ruling ultimately may have estoppel effect in subsequent actions brought by consumers.

For these reasons, we agree with the district court's determination that CDIA has the associational standing required by Article III. Specifically, CDIA has alleged an "injury in fact" that is fairly traceable to the challenged conduct of the defendant and is likely to be redressed by a favorable judicial decision.

V.

Paxton also contests the district court's sovereign immunity and ripeness rulings. Regarding sovereign immunity, the district court determined that the criteria for *Ex parte Young*'s exception to that immunity —permitting suits for prospective injunctive relief against state officials acting in violation of federal law—are satisfied. *See Verizon Maryland*, *Inc. v. Pub. Serv. Comm'n of Maryland*, 535 U.S. 635, 645 (2002); *Ex parte Young*, 209 U.S. 123 (1908). Specifically, the Texas Attorney General is named in his official capacity; CDIA alleges that § 20.05(a)(5) is preempted by the Federal Fair Credit Reporting Act, 15 U.S.C. § 1681, *et seq.*, thus presenting an ongoing violation of federal law; and the requested injunction— prohibiting the Texas Attorney General from enforcing a preempted state law—is properly characterized as prospective relief.

The district court concluded that CDIA's claim is ripe for adjudication because it involves the "purely legal question" of whether the FCRA preempts § 20.05(a)(5), and CDIA has adequately alleged that its

---

issue was presented to the district court. Accordingly, we note the question but do not consider it further.

members face hardship by being forced to either implement the measures necessary for compliance with § 20.05(a)(5) or risk a state enforcement action. Generally, a case is ripe when any remaining questions are purely legal ones and no further factual development is required. *Orix Credit All.*, *Inc. v. Wolfe*, 212 F.3d 891, 895 (5th Cir. 2000). "The ripeness inquiry for an injury that is predicated on threat of litigation "'focuses on whether an injury that has not yet occurred is sufficiently likely to happen to justify judicial intervention.'" *Id.* at 897 (citing *Chevron U.S.A.*, *Inc. v. Traillour Oil Co.*, 987 F.2d 1138, 1153 (5th Cir. 1993))."

In contesting *Ex parte Young's* application to this dispute, Paxton reiterates his assertion that CDIA has not alleged a sufficient threat of enforcement by the Texas Attorney General. Paxton likewise maintains that CDIA's claim is not ripe for review for the same reasons that he contends CDIA lacks standing. That is, he contends that CDIA's alleged injury is premised on a fear of enforcement that is not sufficiently likely to justify pre-enforcement judicial review.

Given the intertwined nature of Paxton's assertions of error, our reasons for affirming the district court's "standing" ruling likewise control our assessment of Paxton's sovereign immunity and ripeness challenges.

## VI.

The State of Texas, through Attorney General Ken Paxton, appeals the district court's rulings denying his motion seeking dismissal on grounds of sovereign immunity, standing, and ripeness. For the reasons stated herein, we AFFIRM and REMAND for additional proceedings, including final disposition of the preemption issue.